**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| FLP LLC,<br><br>             Plaintiff,<br><br>v.<br><br>Kimberly Wolf,<br><br>             Defendant. | No. CV-17-00214-PHX-DGC<br>CV-17-00773 PHX DGC<br>(Consolidated)<br><br>**ORDER** |

Plaintiff FLP LLC moves for a preliminary injunction prohibiting Defendant Kimberly Wolf and her company Liv-It! LLC ("Liv-It") from using FLP's federally registered trademark, "LIVIT". Doc. 62. Ms. Wolf moves to strike a footnote from FLP's reply. Doc. 70. The motions are fully briefed, and no party requests oral argument. For the reasons stated below, the Court will deny both motions.[1]

**I.     Background.**

FLP and Liv-It are competing companies in the houseware industry. Both sell their products to retail stores which then sell directly to consumers. FLP sells its products under many names and trademarks. Doc. 62 at 2. FLP alleges that its chief executive officer first thought of using the names "LIVE IT" and "LIVIT" in 2001, and finalized artwork and a business plan for the names in August 2015. *Id.* at 2-3. In September

---

[1] The Court notes that FLP cites no legal basis for its requested injunctions against Liv-It and Thomas Wolf who are not named as defendants in FLP's complaint or amended complaint. *See* Docs. 1, 36.

2015, FLP contracted for the manufacture of 266,400 product units "of the type FLP sells in its usual course of business" with the "LIVIT" name displayed on the packaging. *Id.* at 3.

Later that month, FLP filed an application with the U.S. Patent and Trademark Office ("USPTO") for trademark protection of the standard character mark "LIVE IT". *Id*. at 3-4. In November 2015, FLP also applied for trademark protection of the mark "LIVIT" (the "Mark"). *Id.* at 4. Ms. Wolf then applied for trademark protection of the mark "Liv-It!" in December 2015. *Id.* In October 2016, the USPTO granted FLP's application for "LIVIT" and suspended action on Ms. Wolf's application for "Liv-It!" because FLP's application was filed first. *Id.* at 7. FLP abandoned its application for the "LIVE IT" mark. *See* Doc. 64-1 at 19-20.

In February 2016, FLP discovered that Ms. Wolf was using the Mark on Liv-It's products and stopped using the Mark "to mitigate any losses that might occur because of a potential challenge to the FLP Mark by the Wolf Parties." Doc. 62 at 5. FLP submits photographs of Liv-It's products and website reflecting the Mark, some of which display the ® symbol next to the Mark. Doc. 62-1 at 3-5, 16, 18-21. FLP alleges that it has sold "tens of thousands of products bearing" the Mark and "gained substantial goodwill and consumer recognition" of the Mark. Doc. 62 at 4-5. FLP further alleges that Liv-It's use of the Mark has caused consumer confusion and has prevented certain retail stores from purchasing FLP's products bearing the Mark. *Id.* at 11-12.

FLP's amended complaint asserts claims for trademark infringement under the Lanham Act and tortious interference with business expectancy. *See* Doc. 36. FLP filed this motion for a preliminary injunction after it participated in a houseware industry trade show in Chicago in March 2018 and observed Liv-It's exhibit containing the Mark. *Id.* at 11; Doc. 62-1 at 23.

**II. Legal Standard.**

"A preliminary injunction is an extraordinary remedy never awarded as a matter of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a

preliminary injunction, a plaintiff must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20; *see also All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The burden is on FLP to make a "clear showing" that it is entitled to a preliminary injunction. *See Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

**III. Discussion.**

FLP seeks preliminary relief only on its trademark infringement claim under the Lanham Act, 15 U.S.C. §§ 1114, 1117, 1125. *See* Doc. 62. The Court therefore will not address the parties' arguments regarding FLP's other claims. Nor will the Court address FLP's arguments regarding damages. *See* Doc. 62 at 13-14 (discussing entitlement to costs, attorneys' fees, profits, compensatory damages, and punitive damages).

To prevail on a trademark infringement claim, FLP must prove "(1) that it has a protectible ownership interest in the mark; and (2) that [Ms. Wolf's] use of the mark is likely to cause consumer confusion, thereby infringing upon [FLP's] rights to the mark." *Dep't of Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). The touchstone for trademark infringement is likelihood of confusion, which asks whether a reasonably prudent consumer is "likely to be confused as to the origin of the good or service bearing one of the marks." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012). This determination is made by applying the well-established *Sleekcraft* factors: (1) strength of the mark, (2) proximity of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) types of goods and degree of care exercised by consumers, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). This eight-factor test is a "pliant" one, in which "the relative importance of each individual factor will be case-specific." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

With respect to ownership, FLP's federal registration of the Mark is "prima facie evidence of its ownership[.]" *Dep't of Parks & Recreation for State of Cal.*, 448 F.3d at 1124. But Ms. Wolf argues that she owns the Mark because she can show prior use in commerce. Doc. 64 at 11. She submits evidence that she organized Liv-It with the Illinois Secretary of State in August 2015, more than two weeks before FLP placed its purchase order and over three months before FLP applied for trademark protection of "LIVIT." Doc. 64-1 at 17. Ms. Wolf alleges that FLP's principals knew of her company and filed for trademark protection only to interfere. Doc. 64-1 at 8-9. She submits declarations from two industry professionals who worked as broker representatives for FLP, are familiar with FLP's products, and never saw "LivIt" or "Live It" appear on any FLP product or trade show exhibit. Doc. 64-1 at 27, 30. FLP's reply disputes Ms. Wolf's assertions, but does not present evidence refuting the assertions or establishing its own use of the Mark in commerce. *See* Doc. 69 at 3-5, 7. The Court cannot conclude that FLP is likely to succeed in proving ownership where Ms. Wolf has presented unchallenged evidence tending to rebut FLP's prima facie evidence of ownership.

With respect to the likelihood of consumer confusion, FLP cites the *Sleekcraft* factors but offers almost no analysis of their application to this case. *See* Doc. 62 at 15-17. The only analysis FLP offers is that the parties are in "direct competition selling the same types of household general merchandise[,]" and consumers are not likely to exercise the diligence necessary to distinguish such inexpensive household items. *Id.* at 17. The remainder of FLP's motion simply offers legal standards followed by bare conclusions. *See, e.g.*, Doc. 62 at 15-17.

Moreover, although FLP presents evidence of Liv-It's packaging and advertising containing the Mark (Doc. 62-1 at 3-5, 16, 18-21, 23), it submits no evidence depicting or describing how the Mark appeared on FLP's products to allow the Court to compare the two. Nor does FLP present any evidence to support its assertions regarding the strength of the Mark and the extent to which it has become associated with FLP. Without a more thorough analysis of the relevant factors and supporting evidence, the Court cannot

conclude that FLP is likely to succeed in proving that Ms. Wolf's use of the Mark is likely to cause consumer confusion.

FLP also asserts that it is entitled to a preliminary injunction "regardless of the presence or absence of actual or likely confusion . . . or of actual economic injury" under 15 U.S.C. § 1125(c). Doc. 62 at 13. That section addresses claims for dilution of "famous" trademarks by blurring or tarnishment. *See* 15 U.S.C. § 1125(c)(1). FLP does not allege, let alone present evidence to support, such a claim. And FLP provides no authority for the proposition that this section entitles it to a preliminary injunction without satisfying the *Winter* factors.

FLP's overall lack of analysis seems to be based on an assumption that its motion need not make the clear showing required because it can do so at a hearing on the motion. *See, e.g.*, Doc. 69 at 7 ("Even if the issue is deemed to be in genuine dispute, it is not a summary bar to injunctive relief, and is more properly the subject of an evidentiary hearing."), 8 ("This is subject to proof at an evidentiary hearing."). FLP is mistaken. First, neither FLP nor Ms. Wolf has requested a hearing. Second, even if the Court were to hold a hearing, this would not relieve FLP of its burden of explaining – in its motion – the grounds that entitle it to a preliminary injunction, along with supporting evidence. *E.g., Sprint Nextel Corp. v. Ezcom, Inc.*, No. CV1200222JFWVBKX, 2012 WL 12882422, at *1 (C.D. Cal. Feb. 13, 2012) (denying the plaintiffs' motion for preliminary injunction without a hearing because the "evidence in support of [the motion was] woefully insufficient to demonstrate a likelihood of success on the merits").

FLP has not submitted sufficient evidence or analysis to establish a likelihood of success. Indeed, as Ms. Wolf notes in her response, FLP's motion is almost entirely copied from its complaint (*see* Doc. 6), with only four original paragraphs. Doc. 64 at 5. While such a summary of facts and legal authority might be sufficient to state a claim for purposes of Rule 12(b)(6), it falls fall short of the clear showing required to obtain the extraordinary remedy of a preliminary injunction.[2]

---

[2] FLP does not argue that it can satisfy the lesser standard of "serious questions

- 5 -

**IV. Ms. Wolf's Requests.**

**A. Motion to Strike.**

Motions to strike are viewed with disfavor and are not frequently granted. S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary* at 302 (2017) (citing cases). They "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Netflix, Inc. v. Blockbuster, Inc.*, No. C06-02361 WHA, 2006 WL 2458717, at *8 (N.D. Cal. Aug. 22, 2006). The Court's local rules attempt to curtail the overuse of motions to strike. *See* LRCiv 7.2(m).

Ms. Wolf moves to strike a footnote from FLP's reply because it allegedly contains irrelevant false statements about a nonparty, Thomas Wolf. Doc. 70; *see* Doc. 69 at 2 n.4. Ms. Wolf cites Ethical Rule 4.4 as the basis for her motion. *Id.* The Court is aware of no authority holding that this rule provides a legal basis for granting motions to strike. Moreover, the information contained in the footnote is irrelevant to deciding FLP's motion for injunctive relief and therefore has not been considered by the Court. The Court will deny Ms. Wolf's motion as unnecessary.

The Court also notes that has not considered the irrelevant information submitted by both parties in the briefing on Ms. Wolf's motion to strike. *See* Docs. 72, 73. The parties are cautioned to avoid such unnecessary filings in the future.

**B. Attorneys' Fees.**

Ms. Wolf requests that the Court award her attorneys' fees and costs "for having to file a third motion related to claims this Court has dismissed previously in two Orders and for having to respond to FLP Parties['] meritless [motion for a preliminary

---

going to the merits." *See Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. fFor the Wild Rockies*, 632 F.3d at 1135). Under this standard, FLP still must demonstrate a "fair chance of success on the merits." *See Cascadia Wildlands v. Scott Timber Co.*, 715 F. App'x 621, 624-25 (9th Cir. 2017) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)). The Court finds that FLP's summary of facts and legal standards does not create serious questions going to the merits.

- 6 -

injunction]." Doc. 64 at 15-16. Ms. Wolf provides the Court with no legal basis for such an award. The Court therefore will deny the request.

**IT IS ORDERED**:

1. FLP's second and condensed application for preliminary injunction (Doc. 62) is **denied**.
2. Ms. Wolf and Liv-It's motion to strike portions of FLP's reply (Doc. 70) is **denied**.
3. Ms. Wolf's request for attorneys' fees and costs (Doc. 64 at 15-16) is **denied**.

Dated this 26th day of July, 2018.

*David G. Campbell*
David G. Campbell
United States District Judge