Jay Calhoun (Bar No. 022836)
firm@law4sb.com
THE CALHOUN LAW FIRM, PLC.
P.O. Box 2995
Tempe, Arizona 85280
Telephone:  (480) 967-1800
Facsimile:  (480) 967-1810
Attorneys for Plaintiff Liv-IT! LLC and
Defendant Kimberly Wolf

# IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Liv-IT! LLC, an Illinois limited liability company, | No. 2:17-cv-00773-DGC |
| Plaintiff, | No. 2:17-cv-00214-DGC |
| v. | (Consolidated) |
| FLP, LLC, an Arizona limited liability company, Paul Brian and Brenda Leigh Croisdale a/k/a Brenda Leigh Gibbs, husband and wife, Kristopher E. and Christine Halvorson, husband and wife, | **DEFENDANT'S WOLF MOTION FOR SUMMARY JUDGMENT ON FLP'S AMENDED COMPLAINT** |
| Defendants. | |
| FLP, LLC, an Arizona limited liability company, | |
| Plaintiffs, | |
| v. | |
| Kimberly Wolf, | |
| Defendant. | |

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES...........................................1

I.     PROCEDURAL HISTORY...............................................................................1

II.    SUMMARY OF FACTS...................................................................................3

III.   STATEMENT OF UNDISPUTED FACTS......................................................5

IV.   ARGUMENT.....................................................................................................9

    A.  APPLICABLE LEGAL STANDARD......................................................9

    B.  SUMMARY JUDGMENT IS WARRANTED BECAUSE THERE IS NO DISPUTE OF FACT THAT WOLF IS THE FIRST AND ONLY USER    OF THE MARK LIV-IT! .........................................................................................................9

    1.  WOLF ADOPTED AND USED THE "LIV-IT" MARK IN COMMERCE FIRST BEGINNING ON AUGUST 26, 2015.....................................................11

    2.  FLP HAS CONCEDED IT NEVER USED THE MARK "LIVIT"...................11

    C.  FLP'S LIKELIHOOD OF CONFUSION CLAIM MUST FAIL BECAUSE  FLP NEVER MANUFACTURED, SOLD OR MARKETED ANY    PRODUCTS UNDER THE "LIVIT" MARK.....................................................................13

    1.  THERE IS NO LIKELIHOOD OF CONFUSION ...................................13

    D.    FLP'S CLAIM FOR INTENTIONAL INTERFERENCE CLAIM MUST   FAIL BECAUSE    THERE IS NO INTERFERENCE WITH ANY CONTRACT OR EXPECTANY BY WOLF.....................................................................15

IV.  CONCLUSION ...........................................................................................17

i

# TABLE OF AUTHORITIES

**CASES**

*Antwerp Diamond Exch. of Am., Inc. v. Better,*
 637 P.2d 733, 740 (Ariz. 1981)..................................................................................18

*Brinson v. Linda Rose Joint Venture,*
53 F.3d 1044, 1048 (9th Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 32 (1986)) ......12

*Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.,* 493 F.2d 709, 711-12 (9th Cir. 1974).....13

*Chance v. Pac-Tel Teletrac,*
242 F.3d 1151, 1158 (9th Cir.2001) ...........................................................................13

*Dep't of Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.,*
448 F.3d 1118, 1124 (9th Cir. 2006) ..........................................................................16

*Hill v. Peterson,*
35 P.3d 417, 420 (Ariz. Ct. App. 2001) ......................................................................18

*Jesinger v. Nev. Fed. Credit Union,*
24 F.3d 1127, 1130 (9th Cir. 1994) ............................................................................12

*New West Corp. v. NYM Co. of Cal., Inc.,*
595 F.2d 1194, 1200 (9th Cir.1979) ...........................................................................13

*Sengoku Works Ltd. v. RMC Int'l, Ltd.,* 96 F.3d 1217, 1219, *as modified,*
97 F.3d 1460 (9th Cir.1996) ........................................................................................12

**STATUTES**

15 U.S.C §§ 1114, 1117(a) and 1125(A) .....................................................................16

15 U.S.C. § 1057(b) ....................................................................................................12

15 U.S.C. § 1115(a) .....................................................................................................12

A.R.S. §12-341 ............................................................................................................20

A.R.S. §12-341.01 .......................................................................................................20

A.R.S. §12-349 ............................................................................................................20

**RULES**

Court's Local Rule 7 ........................................................................................... 3

Fed. R. Civ. P. 56(c) ....................................................................................... 3,12

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 56 and this Court's Local Rule 7, Defendant Kimberly Wolf ("Wolf") respectfully moves this Court for an Order granting summary judgment in her favor on all of Plaintiff FLP's claims. FLP's action is a fraud upon this Court. As the memorandum of law, statement of undisputed facts, excerpts from discovery, witness declarations and the pleadings and the entire record, which are incorporated herein by this reference will demonstrate FLP never manufactured, marketed or sold any products under the "Livit" mark and registered the "Livit" mark solely as a means to hinder defendant Kimberly Wolf from obtaining her legitimate trademark rights.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    PROCEDURAL HISTORY**

This is a consolidated action. On January 23, 2017, FLP filed its Complaint against Wolf alleging three claims: (a) violations of the Lanham Act; (b) injurious falsehood; and (c) interference with prospective advantage. (Doc 1 at 5-16). Wolf moved to dismiss the injurious falsehood and interference claims and FLP's request for punitive damages under the Lanham Act. (Doc. 17). The Court granted the motion to dismiss with leave for FLP to amend the injurious falsehood and interference claims. (Doc. 27). In its order, the Court warned FLP that a further failure to state a claim would result in dismissal without leave to amend. (*Id.* at 6).

On March 15, 2017, Liv-IT! LLC filed its Complaint against FLP *et al*. The Complaint (1) seeks the cancellation of FLP's "Livit" Registration No. 5,053,019; (2) asserts a violation

of 15 U.S.C. 1120; (3) requests a declaratory judgment of no trademark infringement; and (4) a declaratory judgment of trademark invalidity. (Liv-IT! Complaint).

On November 10, 2017, FLP filed its Amended Complaint, asserting the same three claims against Wolf as in their original complaint. (Doc. 36) FLP's original complaint was sixteen (16) pages and contained approximately 84 allegations. FLP's amended complaint is twenty-nine (29) pages and contains 164 allegations (almost double) although there are no new claims. After Liv-IT! LLC filed its complaint, in its amended complaint, FLP included more "allegations" and new dates. In their original complaint, FLP contended (falsely) that "Wolf has advertised their business as offering wholesale sales of household products under "Live It" and "Livit" names and trademarks. (Doc. 1). FLP Amended Complaint now alleges:

> In late August 2015 FLP decided to contract for the manufacturing for wholesale of household products of the type FLP sells in its usual course of business. On September 14, 2015 FLP issued its purchase order to Ningbo Ayuan Import and Export Co. contracting to have manufactured, and then purchase for wholesaling, 266,400 product units with the "LIVIT" trademark displayed on the packaging. (Amended Compl ¶¶ 17-18)[1]

Wolf moved again to dismiss the injurious falsehood and interference claims in the Amended Complaint. (Doc. 41) The Court dismissed FLP's injurious falsehood claim without further leave to amend. (Docs. 41, 47) The Court stated:

> In its previous order, the Court stated that "if FLP plans to amend the injurious falsehood claim, it must identify a specific false statement made by Wolf and not rely on [the ® theory]." Doc. 27 at 5 n.3. FLP has not alleged any such false statement, and again has failed to state a claim for injurious falsehood. (Doc 55).

---

[1] The August 2015 date contradicts the record and FLP's trademark application for "Livit."

Despite the Court's warning and dismissal of the claim, on April 12, 2018, FLP filed a re-titled version of their amended complaint as an application for preliminary injunction. (Doc 55). The Court struck FLP's preliminary injunction application pursuant to Rule 7.2(e). (Doc 57). On May 1, 2018, FLP filed its Second and Condensed Application for Preliminary Injunction. (Doc 62). Wolf filed a response (Doc 64) and a reply followed (Doc. 69). On July 26, 2018, the Court denied FLP's Second and Condensed Application ruling in part:

> With respect to the likelihood of consumer confusion, FLP cites the *Sleekcraft* factors but offers almost no analysis of their application to this case. *See* Doc. 62 at 15-17. The only analysis FLP offers is that the parties are in "direct competition selling the same types of household general merchandise[,]" and consumers are not likely to exercise the diligence necessary to distinguish such inexpensive household items. *Id.* at 17. The remainder of FLP's motion simply offers legal standards followed by bare conclusions. *See, e.g.*, (Doc. 62 at 15-17).

## II.    SUMMARY OF FACTS

FLP's Amended Complaint is a fraud upon the court. At the end of this motion, the Court will know what Wolf knows – that FLP's claims lack merit and this litigation was an orchestrated conspiracy designed to misuse the judicial system in a manner that would result in the destruction of Wolf's business. FLP conceded in discovery that it "had and has no [ ] licensing agreements, distribution agreements, or sales agreements" written or unwritten related to FLP's purported commercialization of any products marked "Live it" or "Livit." (Wolf Statement of Undisputed Facts (WSOF) 1). Yet, FLP argues (albeit wrongly) that their federal registration for the mark "Livit" (that they fraudulently obtained) gives them priority over Wolf although FLP never used the mark "Livit" in commerce as represented in their

trademark application, to this Court and in their Amended Complaint. (WSOF 1, 2) As Wolf has repeatedly demonstrated in Court filings for almost two (2) years, she is the first and only user of the mark "Liv-IT!"

As the evidence demonstrates, in September 2015, FLP discovered that Wolf had started a new business and discovered its name but not its spelling. (WSOF 5, 22-29) FLP orchestrated a scheme to file trademarks that were phonetically similar to Wolf's "Liv-IT!" to prevent her from obtaining marks related to her new business. (WSOF 3-5, 22-29) After registering a trademark similar to Wolf's mark "Liv-IT!", FLP sued Wolf for purported Lanham Act violations and FLP alleged Wolf interfered with non-existent contracts. (WSOF 5, 22-29; Amended Compl. at p.17) This forced Wolf to expend significant sums of money to defend a baseless lawsuit and in which she would not be entitled to attorneys' fees under the Lanham Act. (WSOF 11) Plus, FLP wanted to retaliate against Wolf for failed litigation between 2013-2015, litigated by Gregory Meell for FLP's friend and supplier, Sunrise China Trading Company, in which the Wolfs and their companies obtained a default judgment against Sunrise, in Illinois State Court for approximately $4.2M dollars. (WSOF 3-4)

Nine (9) months after losing the above-referenced litigation, FLP enacted its scheme against Wolf. (WSOF 28-29) FLP filed two trademark applications for marks similar to Wolf's new business. The first mark, an intent to use mark, was filed on September 29, 2015, for "Live it." (WSOF 5) The second mark was filed on November 12, 2015, for "Livit" in which FLP obtained a registration. (WSOF 5) With the power of their fraudulently federally registered mark "Livit," FLP demanded Wolf stop using her mark "Liv-IT!." (WSOF 7)

Wolf's counsel informed FLP that Wolf was the first and prior user of the mark and she had common law rights. (WSOF 4) Despite her rights, FLP demanded Wolf rebrand her "Liv-IT!" products because she was violating FLP's "Livit" mark. (WSOF 4, 7) To avoid a costly litigation battle while the parties resolved the conflict, Wolf rebranded her products to "Keep-IT!" (although Wolf knew she was the prior user). (WSOF 21) Immediately after Wolf expended a substantial amount of money to rebrand "Liv-IT!" products to "Keep-IT!," FLP filed this action against Wolf for alleged Lanham Act violations and intentional interference with prospective advantage.

## III.  STATEMENT OF UNDISPUTED FACTS

On August 26, 2015, Wolf formed her Illinois limited liability company, Liv-IT! LLC to manufacture, distribute, market and sell in interstate and international commerce quality innovative products for the housewares industry, with products offerings in the fields of household cleaning and chemicals, food storage, air care, camping products, bar and party ware, pet toys and accessories, and everyday plastics and melamine-based products (collectively hereinafter, "Liv-IT Products")(WSOF 8) Liv-IT! used "Liv-IT!" as a trademark in addition to as its corporate name. (WSOF 11).

Liv-IT! conceived of the Liv-IT! Trademark for use as a house mark for its various lines of products, which includes "Liv-IT! Clean" for cleaning products, "Liv-IT! Fragrant" for air care products, "Liv-IT! Fresh" for food storage products, "Liv-IT! Fun" for barware and beverage products, "Liv-IT! Playful" for pet toys and accessories, "Liv-IT! Home" for everyday plastics and melamine, and "Liv-IT! Outdoors" for camping products.  Liv-IT!'s

products are made overseas in China and are sold, either directly or indirectly, by Liv-IT! to distributors, national retailers, mail order companies, drug stores, and supermarkets. (WSOF 10).

Immediately after forming Liv-IT! LLC, in September 2015, Liv-IT! products were being offered for sale, marketing and sold. (WSOF 9, 28-29) On September 10, 2015, Liv-IT! sought to obtain a Universal Product Code ("UPC") prefix through GS1 US, Inc. for Liv-IT Products. (WSOF 13). On or around September 12, 2015, Liv-IT! registered the domain name Liv-ITproducts.com through register.com. (WSOF 16). On September 15, 2015, an independent graphic designer, in conjunction with Liv-IT!, developed product packaging for the Purchase Order Products bearing the Liv-IT Trademark. (WSOF 17) On September 21, 2015, Liv-IT! communicated with prospective customers that Liv-IT! was offering for sale in interstate commerce Liv-IT Products under the Liv-IT! Trademark and that such products would be deliverable, directly or indirectly from Liv-IT!'s supplier in China. (WSOF 9, 28). On September 24, 2015, in preparation for the offering of Liv-IT Products in interstate commerce, Liv-IT! placed purchase orders with its Chinese supplier to manufacture microfiber dusters, scourers, and sponges ("Purchase Order Products") (WSOF 12).

Around October 1, 2015, Liv-IT! sent artwork and carton markings bearing the Liv-IT! Trademark to its Chinese supplier directing the supplier to use the artwork and carton markings for the Purchase Order Products. (WSOF 17). Liv-IT! made its first sale of the Purchase Order Products in October 2015. (WSOF 18). Liv-IT! made its next sale of other Liv-IT Products, consisting of dust pans, to a mail order house on October 29, 2015. The

Chinese supplier delivered the Purchase Order Products to Liv-IT! in November 2015 (WSOF 19-20)

### *The FLP LIVE IT and LIVIT Trademark Applications Scheme*

As FLP's September 2015 e-mails demonstrate they sought out to discover the name of Wolf's new limited liability company so they could trademark a name similar to Wolf's company to harass Wolf and destroy her business. (WSOF 6-7, 22-29) On September 29, 2015, FLP (by Halvorson) filed an intent to use trademark application for "Live It" (Ser. No 86/771,843) for over 100 hundred goods. Less than forty (40) days later, on November 10, 2015, FLP (by Halvorson) filed another trademark application for the mark "Livit" (Ser. No. 86/815,138) ("the '138 Application") in both classes 3 and 21, <u>with a date of October 1, 2015 of (i) first use and (ii) first use in interstate commerce</u> for the exact same products listed in FLP's intent to use application "Live-it." (WSOF 5) When FLP filed both applications, it knew that it had not (i) used the LIVIT Trademark on any products identified in the original application or (ii) sold, had made, or produced any product under the LIVIT Trademark. (WSOF 5, 6, 22-29)

### *FLP's Wrongful Assertion of its "Rights" in the FLP Trademarks Against Liv-IT! Premised on the Trademark Applications Replete with Fraudulent Statements*

FLP has conceded that it has no sales, distribution, marketing, or licensing agreements related to the mark "Livit." (WSOF 1-5) FLP contends that the Ningbo "purchase order," for its Air Fresh branded products is a manufacturing agreement for its non-existent "Livit" products. (WSOF 1, 30-34)

### *The Ningbo Purchase Order Contradictions*

The Ningbo purchase order was not referenced in FLP's original complaint. (Doc. 1) In its Amended Complaint, FLP asserts the following:

18. On September 14, 2015 FLP issued its purchase order to Ningbo Ayuan Import and Export Co. contracting to have manufactured, and then purchase for wholesaling, 266,400 product units with the "LIVIT" trademark displayed on the packaging.

22. The first FLP Mark units under the Ningbo Ayuan Purchase order were landed in or around December 2015 and all of them were then sold over time to existing retail buyers who issued regular recurring orders for FLP goods through the Electronic Data Interchange.

23. The September 14, 2015 Ningbo Ayuan Imports Purchase Order ordered several different FLP Items by Item number and of those items, it ordered 36,000 units of FLP Item 8411 at a per unit cost of $0.30.

24. Subsequently **5,000 of those units were produced** for and purchased by FLP before suspending its activity as described above and the related advertising cost was approximately $1,500.00. [Emphasis Added]

The above-referenced contradictions in the FLP's amended complaint speaks for themselves. Despite the alleged purchase of 5,000 units, FLP's counsel contradicted the Amended Complaint by stating to the Court that "the Ningbo Ayuan purchase order [was] for <u>tens upon tens of thousands of these units,</u> there's no -- there's no evidence that it's not valid." (WSOF 31). FLP's counsel further stated:

However, we've got the proof that they were sold to the many types of stores: Walgreens, Target, Wal-Mart, Piggly Wiggly.

So I'm a little bit at a loss about the statements by Ms. Calhoun and the certainty that she expresses. I think we'll be able to easily prove that these units were sold in the tens of thousands. (WSOF 30; Transcript pp. 9-10)

After FLP's counsel made that statement, the Court ordered FLP to produce invoices to Target, Piggly Wiggly and Walgreen for "Livit" marked products to undersigned counsel on or before August 2, 2018. (Doc 77). FLP failed to do so and Wolf filed a Notice of Non-

Compliance with the Court. (Doc 80) FLP's counsel's statement, coupled with FLP's admission that it has no sales, distribution, marketing or licensing agreements is evidence the Ningbo purchase order is not valid. The Ningbo purchase order expressly states the selling date of the purported products is November 20, 2015. (WSOF 1-7)(Doc. 80).

## IV. ARGUMENT

### A. APPLICABLE LEGAL STANDARD

A defendant may move for summary judgment merely on the grounds that the plaintiff has no evidence to support a claim. *E.g., Orme School v. Reeves,* 166 Ariz. 301, 310, 802 P.2d 1000, 1009 (1990) (adopting *Celotex v. Catrett*, 477 U.S. 317, 324 (1986)); *see also Hydroculture, Inc. v. Coopers & Lybrand*, 174 Ariz. 277, 283, 848 P.2d 856, 862 (App. 1992) ("a defendant can obtain summary judgment when the plaintiff is unprepared to establish a prima facie case"). Summary judgment is also appropriate upon a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Once a defendant has identified those parts of the record that indicate an absence of an issue of material fact, "the nonmoving party must 'designate specific facts showing that there is a genuine issue for trial.'" *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1048 (9th Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

### B. SUMMARY JUDGMENT IS WARRANTED BECAUSE THERE IS NO DISPUTE OF FACT THAT WOLF IS THE FIRST AND ONLY USER OF THE MARK LIV-IT!

FLP has conceded it never manufactured, marketed or sold any products under the "Livit" trademark. (WSOF 00) FLP claims priority solely based on the fraudulent trademark applications in which they obtained the registration for "Livit." Wolf is the only party who has used the "Liv-IT!" mark in commerce and the senior. As the only user of the mark "Liv-IT!" it also follows that Wolf could not have infringed FLP's "mark" or caused confusion with FLP's "marks" that were never used or manufactured.

As demonstrated in the undisputed statement of facts, Wolf first used the mark "Liv-IT!" in commerce on August 26, 2015 as a service mark and a trademark which constitutes a valid use of the mark in commerce. (WSOF 11) FLP contends that its federal registration of the mark is *prima facie* evidence of its ownership of "Livit." *See* 15 U.S.C. § 1057(b); 15 U.S.C. § 1115(a); *Sengoku Works Ltd. v. RMC Int'l, Ltd.,* 96 F.3d 1217, 1219, *as modified,* 97 F.3d 1460 (9th Cir.1996). However, trademark rights do not arise out of registration. Wolf may rebut the presumption of ownership with evidence establishing <u>prior use in commerce</u> (here the only use in commerce) of the registered mark. *Id.* at 1220. The exclusive right to a trademark belongs to one who first uses it in connection with specified goods. To demonstrate priority of use, Wolf must prove (1) that she actually adopted and used the marks in commerce prior to FLP's registration in such a manner that sufficiently associated the marks with the Liv-IT! LLC's goods and services, *Chance v. Pac-Tel Teletrac,* 242 F.3d 1151, 1158 (9th Cir.2001); *New West Corp. v. NYM Co. of Cal., Inc.,* 595 F.2d 1194, 1200 (9th Cir.1979); and (2) that its use of the marks was continuous and not interrupted, *Pac-Tel*

*Teletrac Inc.,* 242 F.3d at 1157; *Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.,* 493 F.2d 709, 711-12 (9th Cir. 1974).

### 1. WOLF ADOPTED AND USED THE "LIV-IT" MARK IN COMMERCE FIRST BEGINNING ON AUGUST 26, 2015.

Section 45 of the Trademark Act, 15 U.S.C. §1127, defines "commerce" as "all commerce which may lawfully be regulated by Congress." Section 45 defines "use in commerce" as follows: the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. A mark shall be deemed to be in use in commerce--

> (1) on goods when—
>
> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce, and

As demonstrated above, Wolf began using "Liv-IT!" in commerce as a service mark and trademark on August 26, 2015 and continued doing so until she was forced by FLP to rebrand the products until the Court decides her rights.

### 2. FLP HAS CONCEDED IT NEVER USED THE MARK "LIVIT"

FLP has conceded it never manufactured, marketed or sold any product marked "Livit." (WSOF 1-5) Declarations from two industry professionals who worked as broker representatives for FLP declared they represented FLP for nine (9) years from 2007-2016 and they "have never seen FLP use the trademark LIVIT or LIVE IT at any tradeshow or on any product at any time; and [they] attend[ed] the International Housewares Show yearly, while

11

[they] represented FLP [and they] have neither presented nor sold FLP products with the LIVIT or LIVE IT trademark." (WSOF 24) (*See* Doc. 64-1 at 27, 30; Doc 77)

FLP disclosed over eighty (80) invoices during discovery, none of which includes sales of any product marked "Livit." (WSOF 1-8) When ordered by the Court to produce invoices to Target, Walgreen and Piggly Wiggly, FLP failed to do so. (Docs. 79, 80).

FLP produced no information demonstrating it paid for the "products" in the Ningbo purchase order. FLP provided no artwork or carton mark-up information for the alleged production of the "Livit" products. FLP also provided no documents to evidence any such products were shipped from China to FLP, such as a bill of lading or packing slips. A close review of the purchase order and FLP's Amended Complaint supports the contention that it never ordered any products marked "Livit" (Doc 36):

> The September 14, 2015 Ningbo Ayuan Imports Purchase Order ordered several different **FLP Items by Item number** and of those items, it ordered 36,000 units of **FLP Item 8411 at a per unit cost of $0.30**. (Amended Compl ¶ 23). Subsequently 5,000 of those units were produced for and purchased by FLP **before suspending its activity** as described above and the related advertising cost was approximately $1,500.00 (¶ 24) The first FLP Mark units under the Ningbo Ayuan Purchase order were landed in or around December 2015 and all of them were then sold over time to existing retail buyers who issued regular recurring orders for FLP goods through the Electronic Data Interchange (Amended Compl at ¶ 22) [Emphasis Added]

FLP is betting on the fact that the Court will not understand that FLP has thirty-three (33) brands one of which is Air Fresh ("AF"). (WSOF 26) FLP Item 8411 on the purchase order and the disclosed invoices are for Air Fresh (AF) branded products which sells air freshener warmers and replacement oils scents lavender, fresh linen, berry bliss and tropical breeze.  (WSOF 26, 30) More

importantly, FLP's trademark application for "Livit" contends that FLP's <u>first date of use in commerce for "Livit" was 10/1/2015</u>. The Ningbo purchase order is dated 9/14/2015. FLP concedes it **suspended its purported "Livit"** activity after 9/14/2015 but before 10/1/2015 so the date in the trademark application must be false. (See Amended Compl at 22-24).

### C. FLP'S LIKELIHOOD OF CONFUSION CLAIM MUST FAIL BECAUSE FLP NEVER MANUFACTURED, SOLD OR MARKETED ANY PRODUCTS UNDER THE "LIVIT" MARK

FLP alleges in it amended complaint that Wolf violated §§ 1114, 1117(a) and 1125(A). (Amended Compl at ¶ 8, 11, 12). FLP also alleges that Wolf's use of Liv-IT! LLC's mark "Liv-IT!" in commerce is likely to cause confusion with FLP's mark "Livit." To prevail on its alleged claim of trademark infringement, FLP must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the [Wolf's] use of the mark is likely to cause consumer confusion, thereby infringing upon FLP's rights to the mark. *Dep't of Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). Wolf has already demonstrated that FLP does not have a protectible ownership in the "Livit" mark because FLP has conceded they never manufactured, marketed or sold any products under "Livit" they simply base their claims on their fraudulently obtained federal registration of the mark "Livit" not any use.

#### 1. There is No Likelihood of Confusion

FLP has the burden of proving that the Wolf's use of Liv-IT!, LLC's mark "Liv-IT!" has created a likelihood-of-confusion about the origin of Liv-IT! LLC's goods or services. As the Court noted, FLP cannot meet this burden:

With respect to the likelihood of consumer confusion, FLP cites the *Sleekcraft* factors but offers almost no analysis of their application to this case. *See* Doc. 62 at 15- 17. The only analysis FLP offers is that the parties are in "direct competition selling the same types of household general merchandise[,]" and consumers are not likely to exercise the diligence necessary to distinguish such inexpensive household items. *Id.* at 17. The remainder of FLP's motion simply offers legal standards followed by bare conclusions. *See, e.g.*, Doc. 62 at 15-17.

Moreover, although FLP presents evidence of Liv-IT's packaging and advertising containing the Mark (Doc. 62-1 at 3-5, 16, 18-21, 23), it submits no evidence depicting or describing how the Mark appeared on FLP's products to allow the Court to compare the two. Nor does FLP present any evidence to support its assertions regarding the strength of the Mark and the extent to which it has become associated with FLP. Without a more thorough analysis of the relevant factors and supporting evidence, the Court cannot conclude that FLP is likely to succeed in proving that Ms. Wolf's use of the Mark is likely to cause consumer confusion.

(Doc 77: 4-5)

There can be no likelihood of confusion related to products that FLP never manufactured, marketed or sold. (WSOF 1, 4, 22-31). FLP's poorly photoshopped labels are insufficient to establish trademark rights. See *Brookfield v. West Coast Entertainment,* 174 F.3d 1036, 1053 (9th Cir. 1999) (purported "use" [ ] akin to putting one's mark "on a business office door sign, letterheads, architectural drawings, etc." or on a prototype displayed to a potential buyer, both of which have been held to be insufficient to establish trademark rights).

It is uncontested that Wolf began using the mark Liv-IT! in commerce in August 2015 and FLP has never used the mark in commerce. As such, Wolf is the senior and only user of the mark.

**D. FLP'S CLAIM FOR INTENTIONAL INTERFERENCE CLAIM MUST FAIL BECAUSE THERE IS NO INTERFERENCE WITH ANY CONTRACT OR EXPECTANCY BY WOLF**

FLP has conceded it has no sales agreements related to "Livit." (WSOF 1-5) To establish a *prima facie case* in an action for tortious interference with a prospective business expectancy includes the following elements: (1) the existence of a valid contractual relationship or business expectancy, (2) the interferer's knowledge of the relationship or expectancy, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Antwerp Diamond Exch. of Am., Inc. v. Better*, 637 P.2d 733, 740 (Ariz. 1981) (citations omitted). The interference must also be improper as to motive or means. *Hill v. Peterson*, 35 P.3d 417, 420 (Ariz. Ct. App. 2001).

FLP has not alleged or demonstrated that it had a valid contractual or business expectancy with any "Non-Dollar" store including, such stores as Target, Walgreen's or Piggly Wiggly as stated in its Amended Complaint and alleged by their counsel during the July 23, 2018 teleconference to sell any products labeled "Livit." (WSOF 79, 80). In fact, its former broker representatives declared that they never marketed, sold or saw any products manufactured with the "Livit" mark. (Doc 77).

FLP has not pled any resulting damage. *Id.* at 13. Coupled with this is the absence of any allegation by FLP that a specific identified third party ceased to purchase FLP "Livit" products, whether or not such cessation was due to an alleged wrongful act by Wolf.

FLP's pleading of the third element, inducing and causing a breach or termination of

the relationship or expectancy is inadequate. FLP claims that Wolf's use ® on Liv-IT! LLC's Liv-IT! branded products led "Non-Dollar Stores" to not purchase from FLP. (Am. Compl. 26:1-12.) Nowhere in the Amended Complaint is there an allegation that any specific third party purchased or intended to purchase FLP's purported "Livit" products and thereafter ceased to do so as a result of any action by Wolf in using ® or branding products as Liv-IT!™. There is no evidence that a specific third party stopped purchasing or did not purchase "Livit" products due to Wolf's alleged non-actions. FLP had not pled any damages (fourth element) arising from any purported interference with any prospective advantage that is beyond mere speculation. FLP's claim that Wolf is to blame for the loss of sales of products that were never made or put on the shelves of "Non-Dollar Stores" does not "identify a specific relationship with which the defendant interfered.

FLP's delusional contention that its failure to sell non-existent products trademarked "Livit" resulted from ***Wolf's*** alleged intentional wrongful actions, not ***FLP's*** actions (*viz.,* decision to stop commercialization of Livit products) or inaction (*viz.,* failure to make, offer for sell, sell, or otherwise commercialize products), does not support a plausible interference with prospective economic advantage claim. *Harvard v. Elmore*, 222 F. Supp. 3d 1050 (D.N.M. 2016) (claim of tortious interference with prospective economic contracts requires plaintiff's showing that, no matter how interference occurs, *that the defendant* acted either with an improper motive solely to harm the plaintiff or an improper means to interfere with the contractual relations).

## IV.    CONCLUSION

For the foregoing reasons, Wolf respectfully requests the Court grant her Motion for Summary Judgment against FLP on all claims and Wolf respectfully requests the Court grant Wolf her attorneys' fees and costs pursuant to A.R.S. §§ 12-341.01, -341, -349. Wolf also request the Court grant her punitive damages against FLP and its counsel, Gregory Meell in an amount to be determined by the Court.

RESPECTFULLY SUBMITTED this 31st day of August, 2018.

**THE CALHOUN LAW FIRM, PLC**

By */s/ Jay Calhoun*
Jay Calhoun
Attorney for Defendant Wolf

## CERTIFICATE OF SERVICE

I certify that on the 31st day of August, 2018, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants of record in this matter.

/s/ Jay Calhoun