ABRAM & MEELL, P.A.
ATTORNEYS AT LAW
2020 N. Central Avenue, Suite 690
PHOENIX, ARIZONA 85004
(602) 254-7041
Gregory J. Meell, State Bar No. 012526
gmeell@abrammeell.com
Attorneys for FLP Parties
Gregory J. Meell, State Bar No. 012526

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| FLP, LLC<br>　　　　　　　Plaintiff,<br>vs.<br>KIMBERLY WOLF<br>　　　　　　　Defendant | Case No. 2:17-cv-00214-DGC<br><br>**FLP PARTIES' MOTION FOR SUMMARY AND RESPONSE TO WOLF'S MOTION FOR SUMMARY JUDGMENT** |
| Liv-IT! LLC<br>　　　　　　　Plaintiff,<br>vs.<br>FLP, LLC, et. al.<br>　　　　　　　Defendants | Case No. 2:17-CV-00773-DGC (Consolidated) |

Pursuant to Federal Rule of Civil Procedure 56, the FLP Parties' hereby submit their Motion for Summary re: Trademark Infringement and Response to Wolf's Motion for Summary Judgment regarding the Wolf Parties' infringement of the FLP Mark registered by the United States' Patent and Trademark Office[i] and the Wolf Mark which the UPSTO has refused to register.

Summary Judgment for the FLP parties is required as a matter of law because:

　A. In 2001 FLP's CEO Paul Croisdale conceived the FLP Mark;

　B. In August 2015 FLP adopted the FLP Mark;

---

[i] Hereafter "USPTO".

00147215.DOC

C. In September 2015 FLP began their extensive use of the FLP Mark;

D. Kimberly Wolf's registering the business Liv-IT! LLC with the Office of the Illinois Secretary of State does not constitute use prior to FLP's use;

E. On September 29, 2018 FLP its USPTO "intent to use in commerce" Application for Registration of the FLP Mark and on November 10, 2015 filed its USPTO "actual use in commerce" Application for Registration of the FLP Mark. The USPTO documented that, to its satisfaction, FLP had established its use of the FLP Mark in interstate commerce by no later than October 1, 2015;

F. On December 8, 2015 the Kimberly Wolf filed with the USPTO their "intent to use in commerce" Application for Registration and on April 28, 2016 the USPTO refused the Wolf Parties request to register the Wolf Mark citing FLP's pre-existing Applications and the confusing nature of the Wolf Mark.

G. On October 12, 2016 the USPTO granted the FLP Mark Trademark Registration;

H. Since the Fall of 2015 FLP has sold over 27,000 products bearing the FLP Mark.

I. The Wolf Parties illegally displayed the USPTO Trademark Registration ® symbol with the unregistered Wolf Mark thereby precluding them from ever acquiring a registration for the Wolf Mark.

This Motion is supported by the Memorandum of Points and Authorities below and the FLP's Statement of Facts[ii] filed contemporaneously with this Motion.

**MEMORNDUM OF POINTS AND AUTHORITIES**

**I. Undisputed Factual Points**

1. FLP is engaged in the business of selling to retail sellers household goods under the "LIVIT" name and trademark (hereafter the "FLP Mark") and others.

---

[ii] Hereafter 'FSOF".

Defendant Paul Croisdale is FLP's Chief Executive Officer who conceived of the "Live It" and/or "LIVIT" marks in or around 2001 when he shortened and combined the phrases "live it up" and "live life to the fullest". In or around January 2015 FLP selected the mark for its use. FLP developed a business plan to utilize the mark and in August 2015 the FLP Mark artwork was finalized. Respecting the rights of other trademark registration holders, and to protect against misuse allegations, in deploying a new mark FLP routinely searches the United States Patent and Trademark Office (USPTO) records regarding registration of the same or similar marks. **See FSOF paras. 1 and 2.**

2. FLP found no USPTO records registering, nor referencing application for USPTO registration, of another mark identical or similar to the FLP Mark. So, FLP assigned item numbers 8411 through 8417 deploying the FLP Mark, and on September 14, 2015, FLP issued a purchase order to Ningbo Ayuan Import and Export Co. (hereafter NAIE) contracting for the manufacturing of 266,400 FLP products deploying the mark, and circulated to customers sell sheets and product exemplars deploying the FLP Mark. On September 29, 2015 FLP filed its USPTO "intent to use in commerce" Application for Registration Serial No. 86771843 (hereafter "FLP's 1st Application") of the mark "LIVE IT". On November 10, 2015 FLP filed its USPTO "actual use in commerce" Application for Registration Serial No. 86815138 (hereafter "FLP's 2nd Application") regarding the mark "LIVIT" (hereafter "the FLP Mark"). **See FSOF paras 3 and 4.**

3. The September 14, 2015 NAIE Purchase Order purchased over 266,000 FLP products bearing the FLP Mark. Of FLP Item 8411 bearing the FLP Mark alone, the order purchased over 36,000 units. The first products bearing the FLP Mark from the NAIE Purchase order landed here in December 2015. All of them were subsequently sold to FLP customers. **See FSOF paras. 5 and 6.**

4. Tens of thousands of products bearing the FLP Mark have been sold in retail stores. Through the above referenced conduct FLP has used the FLP Mark in interstate

commerce. Approximately one year ago, FLP documented with the Wolf Parties that from December 9, 2015 through March 31, 2018 FLP sold to its retail vendor customers over 30,000 items of LIVIT products.  As set forth in the Ngbo Ayuan Purchase Order, the LIVIT items are recorded by FLP internally as its product item numbers 8411, 8412, 8413, 8414, 8415 and 8417.  Through FLP'S October 4, 2017 email to the Wolf Parties' former counsel, and FLP's October 6, 2017 Response to Request for Production of Documents a year ago on October 6, 2017 FLP'S counsel disclosed to the Wolf Parties counsel 143 pages of invoice summaries, and 95 multi-paged actual invoices from FLP to the following vendors for sale of various items numbered 8411 through 8417.  These invoices and the credit ledgers showing payments on those invoices evidence that FLP has sold tens of thousands of FLP products bearing the FLP Mark to the following retailers:

> (i) Amazon, (ii)  Piggly Wiggly; (iii) Food City Distribution Center, (iv) Value Merchandisers; (v) C&S Wholesale Grocers, (vi) C&S Battleboro; and (vii) Merchant Distributors.

FLPs invoice spreadsheet reports FLP selling 38,860 FLP Mark bearing items numbered 8411, 8412, 8413, 8414, 8415, and 8417 from December 2015 through March 2017 resulting in gross sale proceeds of $26,897.76.  **See FSOF paras. 7 and 8.**

 5. On December 8, 2015, Kimberly Wolf filed with the USPTO Application for Registration Serial No. 86843198 (hereafter "Wolf's Failed Application") for registration of the mark "Liv-IT!" (hereafter "the Wolf Mark").  That Application declared Wolf's "intent to use" the mark in commerce.  The Wolf Parties never filed an Application declaring their "actual use" of the Wolf Mark in Commerce.  After FLP had developed and deployed its use of the FLP Mark, the Wolf Parties began displaying the Wolf Mark "Liv-IT!" on its products offered for sale.  In or around February 2016 FLP was informed by industry third parties that the Wolf Parties were using a Liv-IT! mark on products

being sold by retailers. So, FLP decided to suspend production and related marketing activities in relation to products bearing the FLP Mark to mitigate any losses that might occur because of a potential challenge to the FLP Mark by the Wolf Parties. **See FSOF paras. 9, 10, and 11.**

6. FLP's March 1, 2016 letter to Kimberly Wolf detailed FLP's position that the Wolf Parties' were infringing FLP Trademark rights. The letter requested that the Wolf Parties stop using the Mark, and requested detailed information about the Wolf Parties use of the Wolf Mark. The March 2, 2016 letter to FLP from the Wolf Parties' attorney Louis P. Alex claimed that Wolf had "commenced use of the mark before FLP'S September 29, 2015 USPTO Application for Trademark Registration, and that the Wolf Parties' had acquired an extension until May 4, 2016 within which to formally oppose FLP's USPTO Application. The letter did not address any of the inquiries in FLP's March 1, 2016 letter. **See FSOF paras. 12 and 13.**

7. On March 23, 2016 the USPTO issued its Approval for Publication for the FLP Mark addressed by the November 10, 2015 Application Registration Serial No. 86815138 (FLP's 2d Application). On March 30, 2016, the USPTO issued its Office Action suspending the Wolf Parties' failed Application due to FLP's pending Applications and the confusing similarity of the Wolf's Mark to FLP Mark. **See FSOF paras. 14 and 15.**

8. On April 28, 2016, the USPTO issued its Office Action denying the Wolf Parties' Application due to FLP's senior Applications and the likelihood that the Wolf Mark would be confused for the FLP Mark. FLP's counsel's June 8, 2016 letter to the Wolf Parties' attorney Alex Cook FLP reiterated the detailed inquiries set forth in FLP's March 1, 2016 letter to Wolf. In addition the letter requested the following information: (a) When, where and how did Ms. Wolf first use the Wolf Mark; (b) When Wolf said she "commenced use" of the Mark, did she mean bona fide use in the ordinary course of

trade; (c) How often had Ms. Wolf used the Mark; (d) Whether Ms. Wolf engaged in any activities of promoting products using the Wolf Mark; (e) A description of the nature, frequency and location of the promotion; (f) Confirmation as to whether the purchasing public ever had any opportunities to buy any product related to the Wolf Mark. **See FSOF paras. 16 and 17.**

9. Attorney Alex never responded to this letter. On August 26, 2016 the USPTO issued its notice of its termination of the extensions of time Wolf requested to oppose FLP's 2nd Application for registration of the FLP Mark. **See FSOF paras. 18 and 19.**

10. On October 4, 2016, the USPTO granted FLP's 2nd Application for Registration of the "LIVIT" mark. This record also documented that to the USPTO's satisfaction FLP established first Use in Commerce no later than October 1, 20$\underline{15}$. On October 12, 2016 the USPTO issued to the Wolf Parties a Suspension Letter suspending action on their Failed Application because the filing dates of FLP's 1st and 2nd Applications preceded the filing date of Wolf's Application and the similarity of the marks. **See FSOF para. 20.**

11. Around May 1, 2017 FLP became aware of the Wolf Parties' Liv-IT! LLC website displaying the Trademark Registration symbol ® with the Wolf Mark. FLP's counsel May 4, 2018 letter to the Wolf Parties' asked that the Wolf Parties "…please confirm what, if any, trademark registration that Liv-IT! acquired and provide us with any related trademark registration documentation your client possesses". The Wolf Parties' counsel responded by a May 4, 2017 email stating in part:

> "…As you know by having read Liv-IT!'s complaint, Liv-IT! owns this trademark based on common law rights and prior use of the mark in interstate commerce, and that it has no federal registration…"

**See FSOF paras. 21 and 22**

12. In a May 5, 2017 letter to the Wolf Parties' counsel, FLP reiterated the inquiries in it attorneys the March 1 and June 8, 2016. The Wolf Parties did not answer. FLP's counsel's May 7, 2017 letter asked that Liv-IT! please provide "(1) Any trademark registration documentation that your client possesses or of which they have knowledge in relation to what they believe to be their trademark; or (2) Confirmation that they do not possess any such registered trademark documentation or that they do not have any knowledge of such documentation." **See FSOF paras. 23 and 24.**

13. The May 10, 2017 email from the Wolf Parties' counsel stated:

> "As I indicated to you before, there is no registration owned by my client of the Liv-IT! trademark…"

FLP repeatedly attempted to settle this matter through and agreement whereby the two marks would co-exist under geographical parameters. See settlement correspondence attached collective here as Exhibit 16. The Wolf Parties rejected this settlement attempt. **See FSOF para. 25.** These documents demonstrate that the Wolf Parties position that FLP's application for and receipt of USPTO Trademark Registration for the FLP Mark was part of a plan to deprive the Wolf Parties of and/or destroy the Liv-IT! business.

14. On May 18, 2017 FLP's counsel transmitted to the Wolf Parties' counsel a letter that conveyed information regarding the Wolf Parties' improper use of the Federal Trademark Registration symbol ® on Liv-IT!'s business website. The May 18, 2017 letter was accompanied by a copy of a "screenshot" of the "liv-itproducts.com" webpage taken at 1:37 p.m. on Saturday May 6, 2017 and again at 5:06 p.m. on May 18, 2017. These displayed two federal trademark registration symbols ® next to the Wolf Mark. The May 18, 2017 letter explained that under the applicable statutory and case law this improper use of the ® registration symbol with an unregistered mark established grounds for denying the offending party any rights to register the mark. The May 19, 2017 email from the Wolf Parties' counsel stated in reply:

> "Liv-IT! LLC does not intentionally use the circle R symbol in an attempt to mislead the public. In fact, it has only inadvertently used the circle R on a few occasions, and such occurrence was not the result of bad faith or deceit, but rather an innocent mistake."

**See FSOF paras. 26 and 27.**

15. FLP's August 2, 2017 Initial Disclosure Statement to the Wolf Parties disclosed photographs of the Wolf Parties' products being offered for sale with the ® symbol prominently with the Wolf Mark. The Wolf Parties offered no explanation for the fact that this stark evidence contradicted their May 10, and May 19, 2017 representations about inadvertence. During the week of August 21, 2017 Paul Croisdale was engaged in business travel in Columbus Ohio and while he was in a Discount Drug Mart store he observed and photographed multiple product displays with a multitude of Wolf Parties' products displaying "Liv-IT, LLC ®" **See FSOF paras. 28 and 29.**

16. In the industry of wholesaling household products, there exist retail stores commonly known as "dollar stores" selling items for a $1.00 or less (i.e. the dollar stores). All stores other than the dollar stores are referred to as "Non-Dollar Stores". FLP has a long history of selling products to "Non-Dollar Stores" like those referenced above. **See FSOF para. 30.**

17. Over many years, FLP has regularly sold products to the Non-Dollar Stores and in turn those Non-Dollar Stores have historically repeated those purchases many times. This history of repeated and regular transactions with the Non-Dollar Stores has resulted in FLP's business expectancy of recurring sales to the Non-Dollar Stores of the same category of FLP products items numbered 8411 through 8417. These are the products which bore, and are protected by, the Federally Registered FLP Mark. It is standard practice in the industry that Non-Dollar Stores will not purchase and sell general merchandise that has been sold in Dollar Stores. The Wolf Parties have sold products to dollar stores bearing the Wolf Mark confusing it with the FLP Mark, and resulting in the

Non-Dollar Stores refusing to purchase FLP products bearing the FLP Mark. **See FSOF paras. 31, and 32.**

## II. Legal Authorities

1. To prevail on a trademark infringement claim, FLP must prove "(1) that it has a protectible ownership interest in the mark; and (2) that [Ms. Wolfs] use of the mark is likely to cause consumer confusion, thereby infringing upon [FLP's] rights to the mark." Department of Parks & Recreation for State of California. v. Bazaar Del Mundo Inc., 448 F .3d 1118, 1124 (9th Cir. 2006).

2. Regarding Department of Parks criterion "(1)" FLP's federal registration of the Mark is "prima facie evidence of its ownership[.]" Id.

3. The Wolf Parties argue that Kimberly Wolf's registering Liv-IT, LLC as a business with the Office of the Illinois Secretary of State establishes her "use" of the Wolf Mark prior to FLP's use of the FLP Mark and gives her common law rights superior to FLP's. This is not the law. In In re Sones, 590 F. 3d 1282 at 1285 (Fed. Cir. 2009) the Federal Circuit Court of Appeals held that the use of the Trademark phrase or logo alone without a picture of the relevant goods.

4. Conversely, the Sones case establishes that FLP's extensive use of the FLP Mark in its September 14, 2018 NAIE Purchase Order and related exemplars and sales material established first use in commerce when followed by actual sales. Id. In discussing the Trademark Manual of Examining Procedure ("TEMP") the Sones Court found that "a label is an acceptable specimen" where the mark is applied to labels. See TMEP § 904.03(a). The Sones Court ruled that, "[FLP'S] showing of the trademark on the normal commercial package for the particular goods is an acceptable specimen." Id. Referencing TMEP § 904.03(c). Thus, tangible specimens—whether labels, containers, or displays—can show use in commerce by describing the goods in sufficient detail in

relation to the marks. Sones, supra 590 F. 3d 1282 at 1287 (Fed. Cir. 2009), citing Jerome Gilson, 1 Gilson on Trademarks § 3.02 (2009).

5. Regarding criterion "(2)" the touchstone for trademark infringement is likelihood of confusion. That is, whether a reasonably prudent consumer is "likely to be confused as to the origin of the good or service bearing one of the marks." Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1214 (9th Cir. 2012). This determination is made by applying the well-established Sleekcraft factors: (1) strength of the mark, (2) proximity of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) types of goods and degree of care exercised by consumers, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion of the product lines. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979).

6. FLP's circumstances fulfill each of the Rearden and Sleekcraft, supra, criteria for establishing the Wolf Parties infringement of the FLP Mark. The facts above establish that:

    a. In 2001 FLP CEO Paul Croisdale conceived of the FLP Mark;

    b. In August 2015 FLP adopted the FLP Mark and created the artwork;

    c. On September 24, 2015 FLP used the FLP Mark in commerce through its NAIE purchase Order for over 266,000 products bearing the FLP Mark displayed on product specimens contained on the purchase order. This established use in commerce prior to Wolf's use of the Wolf Mark. See Sones, supra 590 F. 3d 1282 at 1285-1287 (Fed. Cir. 2009), citing Jerome Gilson, 1 Gilson on Trademarks § 3.02 (2009);

    d. On September 29, 2015 FLP filed with the USPTO an Application for Trademark Registration of the FLP Mark. 15 USC 1057(c) provides that:

> "(c) Application to register mark considered constructive use. Contingent on the registration of a mark on the principal register provided by this Act, the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect, on or in connection with the goods or services specified in the registration against any

other person except for a person whose mark has not been abandoned and who, prior to such filing--

    (1)  has used the mark;

    (2)  has filed an application to register the mark which is pending or has resulted in registration of the mark; or

    (3)  has filed a foreign application to register the mark on the basis of which he or she has acquired a right of priority, and timely files an application under section 44(d) [15 USCS § 1126(d)] to register the mark which is pending or has resulted in registration of the mark."  Emphasis added.

e.  Wolf's registration of the Liv-IT! LLC business with the Office of the Illinois Secretary of State and simply listing the business name therein did not constitute use.  See Sones, supra 590 F. 3d 1282 at 1285-1287 (Fed. Cir. 2009), citing Jerome Gilson, 1 Gilson on Trademarks § 3.02 (2009).

f.  Wolf had not filed an application which was pending or had resulted in registration of the Wolf Mark before FLP's Applications.

g.  Wolf had not filed a foreign application to register the Wolf Mark.

h.  On November 10, 2015 FLP filed with the USPTO an Application for Trademark Registration of the FLP Mark which included product specimens bearing the FLP Mark that were being sold;

i.  From 2015 through March 2017 FLP sold over 37,000 products displaying the FLP Mark establishing the strength of the mark;

j.  The Wolf Parties did not file an Application for Trademark Registration of the Wolf Mark until December 8, 2015.  That Application declared Wolf's "intent to use" the Wolf Mark in commerce.  The Wolf Parties never filed an Application declaring "actual use" of the Wolf Mark in commerce.

k.  On April 28, 2016 the USPTO refused Wolf's application for registration of the Wolf Mark citing the FLP Applications 86771843 and 86815138" and stating that "If one or more of the marks referenced in those applications register, [the Wolf

Mark] may be refused registration….because of a likelihood of confusion with [the FLP Mark]".

l.   On October 2, 2016 the USPTO granted FLP's "actual use" Application and registered the FLP Mark.  The USPTO notice of registration documented that, to the USPTO'S satisfaction, this use in commerce began no later than October 1, 2015;

m.  The Wolf Mark has never been granted registration by the USPTO;

n.   Before and after the USPTO's refusing the Wolf Parties registration application, the Wolf Parties improperly displayed the USPTO Registered Trademark ® symbol with the Wolf Mark on the Liv-It! website and on its products sold to its retail seller customers fraudulently misrepresenting that the Wolf Mark had been granted registration with the USPTO.

7.   Applying these facts to the Department of Parks case demonstrates that FLP has met the criteria for establishing infringement as follows.

i.   **Strength of the Mark**:  FLP has established the strength of the mark by sales of over 37,000 units in a relatively short amount of time;

ii.  **Proximity of the Goods**:  It is undisputed that the parties' goods at issue are marketed in direct competitive proximity to each other.  Entrepreneur Media, 279 F.3d at 1147 (explaining that goods are related when both companies offer products relating to the same general industry);

iii. **Similarity Of The Marks:** The UPSTO' examining attorney declared the marks confusingly similar and likely to cause confusion in the consumer;

iv.  **Evidence of Actual Confusion:**  The Affidavits establish that as early as February 16, 2016 other businesses in this industry contacted FLP expressing confusion about whether or not FLP was selling its trademarked products through Liv-IT! and the Wolf parties;

     v. **Marketing Channels Used**  It is undisputed that the parties use the same marketing channels;

     vi. **Types of Goods and Degree of Care Exercised by Consumers:** It is undisputed that the parties deal in the sale if similar and sometimes identical goods in direct competition with each other.

     vii. **Defendant's Intent in Selecting the Mark**.  In the Affidavit of Paul Croisdale, the creator of the FLP Mark the intent in creating the mark and FLP adopting is detailed and demonstrates good faith.  See FSOF para. 1.  The Wolf Parties have never detailed their intent in selecting the Wolf Mark.  After the initiation of these consolidated actions, from April 2017 through May 2017 FLP engaged in rather lengthy attempts to settle this matter under terms where the parties' marks would co-exist in under reasonable geographic parameters.  This belies Wolf's claim that FLP's use and registration of the FLP Mark was the result of some bad faith intent to end the Wolf Parties business or otherwise cause them harm.  From April 2017 through May 2017 FLP repeatedly offered to settle the matter under terms whereby the Wolf Parties would have exclusive right to use the Wolf Mark in the territories where Liv-IT! LLC had made sales and FLP would use the FLP Mark in territories where its FLP Mark goods had been sold.  The Wolf Parties repeatedly rejected this reasonable good faith proposal.  See FSOF para. 25.

     viii. **Likelihood of expansion of the product lines**.  The description of the "Good and Services" in the FLP Mark Application identifies 42 different products for Air Freshening, to Automobile Care, Household Cleaners, Skin Car, Nail Care, Oven Cleaners, and Pumice stones to which FLP listed as expanding its FLP Mark.

    8.    These six elements establish the merit of the FLP's Trademark Infringement claim.  See <u>Sleekcraft</u>, supra 599 F.2d 341, 348-49 (9th Cir. 1979).

9. Summary Judgment in favor of FLP is required as a matter of law here based on the undisputed facts. Summary judgment is properly granted by the trial court "if the facts produced in support of the claim have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim." McAlister v. Citibank, 171 Ariz. 207 at 211, 829 P.2d 1253 at 1257 (App. 1992) citing Orme School v. Reeves, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990); *see also* Wagenseller v. Scottsdale Memorial Hosp., 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985); and Moreno v. Garcia, 169 Ariz. 586, 821 P.2d 247 (App. 1991).

10. By reproducing a counterfeit, copy and/or colorable imitation of FLP's registered mark and applying that reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements used in commerce in the sale, offering for sale, distribution, or advertising of goods or services the Wolf Parties have caused confusion, mistake, and deception among the consumer. Therefore, the Wolf Parties' conduct constitutes a violation of 15 U.S.C. §1114.

11. Separate and apart from FLP's conduct establishing its ownership of the FLP Mark and the infringement of the Wolf Mark, the Wolf Parties conduct precludes them from any registration rights in the Wolf Mark. Specifically, by selling products bearing the Wolf Mark with the registration notice ® symbol, the Wolf Parties falsely represented that they owned title to the USPTO Trademark Registration for the mark and thereby diminished the pecuniary value of the FLP Mark registration and the related products on which the FLP Mark is displayed. The Federal Circuit Court has held that "The improper use of a registration notice in connection with an unregistered mark, if done with intent to deceive the purchasing public or others in the trade into believing that the mark is registered, is a ground for denying the registration of an otherwise registrable mark." See Copelands' Enterprises Inc. v. CNV Inc., 945 F.2d 1563, 20 USPQ2d 1295 (Fed. Cir.

1991). The record establishes that the Wolf Parties made disingenuine and fraudulent denials of using the registration notice ® symbol and that they continued to use it in selling their products even after being put on notice of the impropriety of these actions. This indisputable record demonstrates it is beyond reasonable debate that the Wolf Parties acted in bad faith and with the intent to deceive. **See FSOF paras. 21 through 29**.

12. In Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc., 2012 WL 98493 (S.D.N.Y), the court quoted McCarthy: the "use of ... the ® adjacent a mark not federally registered is ... a form of false advertising which may result in serious repercussions."

13. By selling to dollar stores general merchandise bearing the Wolf Mark displaying the ® symbol, the Wolf Parties published the Wolf Mark representing that it was a product affiliated with the FLP Mark.

14. Summary Judgment is a method for disposing of actions in which there is no genuine issue as to a material fact. See Federal Rule of Civil Procedure 56 Advisory Note. The Court should grant Summary Judgment if, on the state of the record, it would have to grant a motion for directed verdict at the trial. Aaron Ferer and Sons Ltd. v. Chase Manhattan Bank, 731 F.2d 112 (2nd Cir. 1984); Anderson v. Phillips Petroleum Co., 861 F.2d 631 (10th Cir. 1988).

15. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to Judgment as a matter of law". See Federal Rule of Civil Procedure 56(c); and Anderson vs. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). The factual disputes that are irrelevant or unnecessary will not be considered. The initial burden rests on the moving party to establish the absence of any genuine issue on material fact. Once satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. See,

Alexander vs. Perrill, 836 F.Supp. 701, 702 (D. Ariz. 1993).   See, also, Celotex Corporation. vs. Catrett, 477 U.S. 317, 323-23, 106 S.Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986).

16.   Under 15 U.S.C. §1117(b) FLP is entitled to recover; (1) The Wolf Parties profits; (2) Any damages sustained by FLP; and (3) the costs of the action, or an amount equal to three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee."   See the Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12083 (Oct. 10, 1984)."

17.   FLP may elect to receive statutory damages.   Under the "Prioritizing Resources and Organization for Intellectual Property Act (PRO-IP)" and 15 U.S.C. §1117(c) the damages penalty has increased from the previous range of $500.00 to $100,000.00 per mark, to $1,000.00 to $200,000.00 per mark.

## **CONCLUSION**

Based upon the foregoing the FLP parties request that the Court provide the following relief:

A.   An Order granting summary judgment in favor of FLP on its claims of trademark infringement and false advertising;

B.   An Order awarding FLP its attorney fees incurred in relation to this issue.

C.   An Order setting trial on the issue of FLP's damages resulting from the Wolf Parties' infringement;

D.   An Order denying Kimberly Wolf's Motion for Summary Judgment.

Respectfully submitted on October 1, 2018

By *Gregory J. Meell*

Gregory J. Meell
Abram & Meell, PA
201 North Central, Suite 2400
Phoenix, Arizona 85073
Attorneys for Plaintiff FLP

**CERTIFICATE OF e-TRANSMISSION AND SERVICE**

Gregory J. Meell, Esq certifies that on October 1, 2018 I electronically transmitted to the Clerk of this Court for filing with the Court the original of the foregoing Motion and Response and, by e-service, provided a copy of it to Jay Calhoun, The Calhoun Law Firm, PLC, P.O. Box 2995, Tempe, Arizona 85280 / email address firm@law4sb.com, the attorney for Liv-IT! and Kimberly Wolf.

Dated October 1, 2018

By *Gregory J. Meell*

ABRAM & MEELL, P.A.
ATTORNEYS AT LAW
2020 N. Central Avenue, Suite 690
PHOENIX, ARIZONA 85004
(602) 254-7041
Gregory J. Meell, State Bar No. 012526
gmeell@abrammeell.com
Attorneys for FLP Parties
Gregory J. Meell, State Bar No. 012526

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| FLP, LLC | Plaintiff, | Case No. 2:17-cv-00214-DGC |
| vs. | | **ORDER** |
| KIMBERLY WOLF | Defendant | |
| Liv-IT! LLC | Plaintiff, | Case No. 2:17-CV-00773-DGC (Consolidated) |
| vs. | | |
| FLP, LLC, et. al. | Defendants | |

**IT IS HEREBY ORDREED:**

    A.   Granting summary judgment in favor of FLP on its claims of trademark infringement and false advertising;

    B.   Awarding FLP its attorney fees incurred in relation to this issue.

    C.   Setting trial on the issue of FLP's damages resulting from the Wolf Parties' infringement;

    D.   Denying Kimberly Wolf's Motion for Summary Judgment.

Dated:_____

_____
Judge David G. Campbell

-18-