**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

FLP LLC,

              Plaintiff,

v.

Kimberly Wolf,

              Defendant.

No. CV-17-00214-PHX-DGC
CV-17-00773 PHX DGC
(Consolidated)

**ORDER**

FLP, LLC sued Defendant Kimberly Wolf for trademark infringement and tortious interference. Doc. 1, Case No. CV-17-00214. Ms. Wolf's company, Liv-IT!, LLC, filed a separate suit against FLP seeking cancellation of FLP's trademark and declaratory judgment of no trademark infringement. Doc. 1, Case No. CV-17-00773. The cases have been consolidated. Ms. Wolf and Liv-IT!, LLC will be referred to in this order as the "Wolf Parties."[1]

The parties have moved for summary judgment. Docs. 82; 92. The Wolf parties also have filed a motion to strike and for sanctions. Doc. 109. The motions are fully briefed, and no party requests oral argument. For the reasons stated below, the Court will deny the motions and set this case for trial.

---

[1] When citing to documents in CV-17-00214, the Court will simply cite to "Doc." The Court will cite documents filed in CV-17-00773 as "Liv-IT! Doc."

1    **I.    Background.**

2          The parties dispute most of the facts.  For that reason, the Court discusses each side

3    separately.   This background section includes key facts from the parties' factual

4    summaries, even when unsupported.  The Court notes that FLP, in violation of Local Rule

5    of Civil Procedure 56.1, failed to file a controverting statement of facts.  Doc. 102 at 7.

6    But the Wolf Parties also violate Local Rule 56.1 by providing only general citations to

7    large exhibits, rather than citing to "a specific admissible portion of the record" that

8    supports each factual assertion.[2]  LRCiv 56.1(a), (b); *see, e.g.*, Doc. 83 ¶¶ 15, 17, 21, 22.

9    Because both sides have failed to comply with the local rules, the Court will not simply

10   credit the Wolf Parties' statements as true.

11         **A.    FLP's Facts.**

12         FLP sells household products to retail stores that resell directly to consumers.  It

13   sells its products under many names and trademarks.  Doc. 99-1 ¶¶ 3,5.  FLP asserts that

14   its CEO conceived of and developed the "LIVIT" trademark in 2001 by shortening and

15   combining the phrases "live it up" and "live life to the fullest." *Id.* ¶ 9.  FLP decided to

16   move forward with the mark in January 2015 and assigned it to several items, which FLP

17   ordered from a Chinese supplier on September 14, 2015 ("the NAIE purchase order").

18   Docs. 93 ¶ 3; 99-1 at 33.  FLP contends that it ordered more than 36,000 products with the

19   LIVIT mark and circulated sell sheets and product exemplars to customers, all of which

20   displayed the mark.  *See* Docs. 93 ¶ 3; 99-1 ¶ 12; 99-1 at 33-43.  The NAIE purchase order

21   products arrived in country in December 2015 and were subsequently sold to retail

22   customers.  Doc. 93 ¶ 6.

23

24   _____

25   [2] For example, several paragraphs in the Wolf Parties' statement of facts cite to Exhibit 20,
     with no specific page citation.  *See, e.g.,* Doc. 83 ¶¶ 9-13, 17-18.  And yet Exhibit 20
26   consists of 71 pages of emails, lease documents, purchase orders, and other miscellaneous
     materials, making it virtually impossible to know precisely what the Wolf Parties are citing
27   to support their version of the facts.  *See* Doc. 86.  It is not up to the Court to review these
     pages in search of something that might help the Wolf Parties.  "[J]udges are not like pigs,
28   hunting for truffles buried in briefs."  *Indep. Towers of Washington v. Washington*, 350
     F.3d 925, 929 (9th Cir. 2003) (citation omitted).

On September 29, 2015, FLP filed an intent-to-use-in-commerce trademark application with the United States Patent and Trademark Office ("USPTO") for the mark "LIVE IT." *See* Docs. 93 ¶ 4; 99-1 at 14-20. On November 10, 2015, FLP filed its actual-use-in-commerce application for the mark "LIVIT." Docs. 93 ¶ 4; 99-1 at 22-31. The application states that FLP used the mark in commerce "at least as early as 10/01/2015." Doc. 99-1 at 26. It attached pictures of a scrubber brush and an air freshener with the LIVIT mark. *Id*. at 29.[3]

According to FLP, tens of thousands of products bearing the LIVIT mark have been sold in retail stores. FLP supports this assertion by providing copies of invoices to Amazon, Piggly Wiggly, Food City Distribution Centers, and other large purchasers, showing sales of the item numbers that, according to FLP, bore the LIVIT mark. Doc. 99-1 ¶ 7; Doc. 96-1 at 2-11. FLP's records indicate that it sold 38,860 LIVIT items between December 2015 and March 2017. Doc. 93 ¶ 8.

In February 2016, a third party informed FLP that the Wolf Parties were using a Liv-IT! mark to sell household products to retailers. Doc. 93 ¶ 11. FLP suspended production of the LIVIT products and related marketing activities because of a potential challenge to its mark.[4] *Id*.; Doc. 99-1 ¶ 5. FLP contacted the Wolf Parties regarding possible trademark infringement. Doc. 93 ¶ 12. The Wolf Parties answered that Liv-IT!, LLC started using the Liv-IT! mark before FLP used the LIVIT mark.

On March 23, 2016, the USPTO approved the first application for FLP's LIVE IT mark. Doc. 93 ¶ 15. The USPTO suspended, and ultimately denied, the Wolf Parties' application for the LIV-IT! mark, finding FLP's pending application barred the Wolf Parties' registration. Docs. 93 ¶¶ 14-16; 99-1 at 58-65. On October 4, 2016, the USPTO granted FLP's second application for the LIVIT mark. Docs. 93 ¶ 20; 95-1 at 7.

---

[3] The Court will refer to the marks individually as "LIVE IT" and "LIVIT" and together as "FLP's marks."

[4] FLP does not explain how this assertion squares with its claim that it sold LIVIT products through March 2017. *See* Doc. 93 ¶ 8.

According to FLP, the Wolf Parties continued to use the Liv-IT! mark on products after the USPTO denial. *See* Doc. 93 ¶ 29. Further, Liv-IT!, LLC used the trademark registration symbol "®" next to Liv-IT! on its website. *Id*. ¶ 21.

**B.    The Wolf Parties' Facts.**

Liv-IT!, LLC was organized under Illinois law on August 26, 2015. Doc. 83 ¶ 8. The company markets and sells various household and other products. *Id*. Before September 29, 2015, Liv-IT!, LLC used its mark to issue purchase orders, pay for manufacturing, register for trade shows, lease office space, obtain insurance, and obtain UPC codes for products. *Id*. ¶ 9; Doc. 115.

The Wolf Parties contend that on or around September 15, 2015, Liv-IT!, LLC hired an independent graphic designer who developed product packaging, disposable food storage containers, lint rollers, cleaning products, and air care products each bearing the Liv-IT! mark. Doc. 83 ¶ 17. The graphic designer delivered this work to Liv-IT!, LLC on or around September 28, 2015. *Id*. The Wolf Parties then submitted purchase orders for products that would bear the Liv-IT! mark. *Id*. ¶18; Doc. 115-1 at 36 (purchase order stating items should have Liv-IT! logo). These products were offered to Liv-IT!, LLC customers on or around September 21, 2015. Doc. 83 ¶ 20. Liv-IT!, LLC's second sale of the products was on October 29, 2015. *Id*. The items were delivered by a Chinese manufacturer in early November 2015. *Id*. ¶ 19.

The Wolf Parties contend that FLP learned of Liv-IT!, LLC and its uses of the Liv-IT! mark on September 15, 2015. *Id*. ¶ 22. Thus, FLP's September 29, 2015 application for phonetically similar marks was done to prevent Liv-IT!, LLC from registering its mark. Docs. 83 ¶¶ 4, 22; 83-4 at 4. Use of the FLP's marks forced Liv-IT!, LLC to rebrand their products to "Keep-IT!." *See* Doc. 83 ¶ 32.

**C.    The Parties' Motions.**

The Wolf Parties move for summary judgment on all of FLP's claims. Doc. 82. They argue that they have prior use of the trademark, that FLP never used its marks in commerce, and that FLP has failed to show a tortious interference with business

1    expectancy.  Doc. 82 at 15-19.  FLP cross-moves on its claims for trademark infringement
2    and false advertising.  Doc. 92.  FLP argues that it has a presumption of ownership of the
3    marks, that the Wolf Parties' use of their mark causes confusion among vendors and
4    consumers, and that the Wolf Parties falsely represented that their mark was trademarked
5    in violation of the Lanham Act.  Doc. 92 at 9-14.

## II.    LEGAL STANDARD.

A party seeking summary judgment "bears the initial responsibility of informing the
district court of the basis for its motion and identifying those portions of [the record] which
it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v.
Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence,
viewed in the light most favorable to the nonmoving party, shows "that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  Summary judgment is also appropriate against a party who "fails to
make a showing sufficient to establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at
322.  Only disputes over facts that might affect the outcome of the suit will preclude
summary judgment, and the disputed evidence must be "such that a reasonable jury could
return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
248 (1986).

## III.    DISCUSSION.

### A.    Infringement of FLP's Trademark.

To prevail on a trademark infringement claim, FLP must prove "(1) that it has a
protectible ownership interest in the mark; and (2) that [the Wolf Parties'] use of the mark
is likely to cause consumer confusion, thereby infringing upon [FLP's] rights to the mark."
*Dep't of Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118,
1124 (9th Cir. 2006).

**1.      Ownership of the Mark.**

**a.      Legal Standard.**

Federal registration is "prima facie evidence of . . . ownership[.]" *Dep't of Parks*, 448 F.3d at 1124. But mere "adoption of a mark without bona fide use, in an attempt to reserve it for the future, does not create trademark rights." *See Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d 1151, 1157 (9th Cir. 2001). A "litigant attempting to establish priority of commercial use must demonstrate both adoption of the marks and 'use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Dep't of Parks*, 448 F.3d at 1124 (citing *Brookfield Commnc'ns, Inc. v. West Cost Entm't Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999) (alteration omitted)).

Under the Lanham Act, a mark shall be deemed to be used in commerce:

> (1)      on goods when –
>
> (A)      it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods make such placement impracticable, then on the documents associated with the goods or their sale.

15 U.S.C. §1127. The test is a totality of circumstances, allowing consideration of non-sales activities so long as they show the mark has been publicly rendered in commerce. *See Brookfield*, 174 F.3d at 1052.

**b.      The Wolf Parties' Prior Use Defense.**

The Wolf Parties move for summary judgment on FLP's trademark infringement claim, arguing that they used Liv-IT! as a trademark and a service mark as of August 2015, the month Liv-IT!, LLC was registered with the Illinois Secretary of State. *See* Doc. 82 at 15.[5] FLP responds that a business registration is not sufficient to satisfy prior use of a

---

[5] A service mark is any "word, name, symbol, device or any combination thereof used . . . to identify and distinguish the services of one person . . . from the services of others." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1156 (9th Cir. 2001). Because Liv-IT! only goods and not services, it does not have a service mark.

trademark. Doc. 92 at 9 (citing *In re Sones*, 590 F.3d 1282, 1285 (Fed. Cir. 2009)). FLP's reliance on *Sones* for this point is mistaken, as the case addresses the requirements to obtain trademark registration through the USPTO, not prior use of a trademark in commerce.

Under the fact-intensive totality of the circumstances test, business registration alone is insufficient absent evidence that use of a mark created an association between the goods and the mark. *See Brookfield*, 174 F.3d at 1052 (mere use of the mark in email correspondence between lawyers and a few customers is insufficient); *see also Dep't of Parks*, 448 F.3d at 1126-27 (historic and transitory use insufficient); *New West v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1200 (9th Cir. 1979) (use in advertising or promotional material connected with the publicizing of the product sufficient).

The Wolf Parties assert that they informed their associates of Liv-IT! products, communicated with prospective customers regarding Liv-IT! products, hired a graphic designer to develop artwork for Liv-IT! packaging, placed the Liv-IT! trademark on purchase orders on October 1, 2015, and made sales of Liv-IT! products on September 21 and October 1, 2015. *See* Doc. 83 ¶¶ 14-20. But it appears from the Court's review of the Wolf Parties' general evidentiary citations that only one of these statements is partially supported – that on October 1, 2015, Liv-IT!, LLC submitted a purchase order with an instruction to include the "LIV-IT!" logo. Doc. 115-1 at 39.

The Wolf Parties also argue that under *Sones*, a display bearing a trademark at a trade show is sufficient even if the products were not also displayed. Doc. 102 at 8. The Wolf Parties cite to an email from the CEO of FLP, stating that Liv-IT!, LLC would be at the Non Foods Marketing show at the end of October. *Id*. *Sones*, however, is not applicable. A picture of a logo displayed at a tradeshow is sufficient to establish "use in commerce" for a trademark application, but it does not prove a defense of prior use on its face. The prior use defense requires that the mark be publicly used in such a way that an appropriate segment of the public identifies the mark with the particular goods sold by the adopter of the mark. The Wolf Parties fail to explain how their appearance at a trade show satisfies this test.

Further, both the trade show referenced by the Wolf Parties and the invoice referencing the Liv-IT! logo appear to have occurred after FLP's NAIE purchase order of LIVIT products and after FLP's intent-to-use application, which occurred on September 14 and 29, 2015, respectively. *See* Doc. 93 ¶¶ 3-4. The Court concludes that there exists a dispute of fact on whether the Wolf Parties used their mark prior to FLP using its marks.

### c. Rebutting FLP's Presumption of Ownership.

The Wolf Parties move for summary judgment on the ground that FLP cannot prove ownership of the trademark. Doc. 82 at 15-17; *see Celotex*, 477 U.S. at 322. FLP's registration provides prima facie evidence of the validity of the registered mark and its exclusive right to use the mark on the goods and services specified. 15 U.S.C. § 1057(b); *Brookfield*, 174 F.3d at 1047. The Wolf Parties can rebut FLP's presumption of ownership by showing prior use or that FLP did not actually use the mark in the sale of goods or services at the time of registration. *Sengoku Works Ltd. v. RMC Int'l, Ltd.,* 96 F.3d 1217, 1219 (9th Cir. 1996). The Wolf Parties must overcome the presumption by a preponderance of the evidence. *Id*. Once the presumption is rebutted, mere registration will not enable FLP to survive summary judgment. *Talking Rain Beverage Co. v. South Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003).[6]

The Wolf Parties argue that a reasonable jury would find FLP failed to use the mark in commerce because: (1) FLP conceded that it never manufactured, marketed, or sold any product marked "LIVIT"; (2) two industry professionals who worked as broker representatives for FLP attested to never seeing products with the FLP marks; (3) none of the products on the NAIE purchase order are actually identified as LIVIT products; (4) FLP has failed to demonstrate that it paid for or received the NAIE purchase order products. Doc. 82 at 15-16. FLP responds that its NAIE purchase order, affidavits from its CEO and

---

[6] In their reply brief, the Wolf Parties argue that they can seek cancellation of a registered trademark on the basis of fraud under 15 U.S.C. § 1064. Doc. 102 at 14. The Court will not address this argument because it is raised in a reply brief and it pertains to Liv-IT!, LLC's claim against FLP. The Wolf Parties only moved for summary judgment on FLP's claims. *See* Doc. 82 at 5.

Vice President ("VP") in charge of compliance, and invoices prove that it manufactured, marketed, or sold products with the LIVIT mark. Doc. 107 at 4-5.

### i. Alleged FLP Concessions.

The Wolf parties point to five paragraphs in their statement of facts to support their contention that FLP conceded it never manufactured, marketed, or sold any product with the LIVIT mark. Doc. 82 at 11. The Wolf parties claim that (1) FLP conceded that it had no licensing agreements, distribution agreements, or sales agreements in relation to sale of products with the FLP marks; (2) the Court previously noted that the Wolf parties presented evidence to rebut FLP's prima facie evidence of ownership; (3) in 2013, counsel for FLP and a lawyer working for FLP initiated litigation against Ms. Wolf and her family, and the litigation ended in Ms. Wolf's favor; (4) after the failed litigation, FLP discovered Wolf's new business and orchestrated a plan to register a trademark similar to her new business; and (5) FLP filed two trademarks that are phonetically similar to Liv IT!. Doc. 83 ¶¶ 1-5.

Only the first paragraph arguably supports the broad concessions the Wolf Parties claim in their motion. *Id.* ¶ 1. In support of that paragraph, the Wolf Parties cite seven exhibits, none of which entirely supports the assertion. The closest support appears to come from FLP's supplemental interrogatory responses, which indicate that FLP never made licensing, distribution, or sales agreements because it suspended the products after learning of possible objections to its trademark. Doc. 83-1 at 22. But FLP's initial responses stated that FLP entered a manufacturing agreement for LIVIT products evidenced by the NAIE purchase order. *See* Doc. 83-1 at 8. And FLP's affidavits, discussed below, assert that FLP sold products manufactured under the purchase order. The Court cannot rely on FLP's alleged concessions to grant summary judgment in this factually disputed case.

### ii. NAIE Purchase Order.

The Wolf Parties make several arguments to discredit the NAIE purchase order – arguments which succeed only in creating a dispute of fact as to the purchase order's veracity. The Wolf Parties first argue that the purchase order is inadmissible because FLP

failed to establish the requisite foundation or present a witness who can testify as to its validity. Doc. 102 at 33. But a nonmoving party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Orr v. Bank of Am.*, 285 F.3d 764, 774 (9th Cir. 2002). Instead, the substantive evidence itself must be admissible. *Id.* The Court finds that the purchase order could be admissible as a business record under Rule 803(6) through testimony FLP likely could procure for trial. *See United States v. Childs*, 5 F.3d 1328, 133-34 (9th Cir. 1993).

The Wolf Parties next argue that the purchase order is forged, FLP did not provide evidence that it paid for or received the NAIE items, and the items were actually marked with a different FLP brand name. *See* Docs. 82 at 16; 83 ¶ 30. The Wolf Parties also argue that the timing of the NAIE purchase order conflicts with FLP's trademark application. Doc. 82 at 16-17. These factual arguments are supported only by citations to large exhibits in the record with no specific page citations. *See* Doc. 83 ¶ 30. As already noted, it is not the Court's responsibility to search these exhibits for evidence supporting the Wolf Parties' position. At most, the Wolf Parties have created a triable issue as to whether the NAIE purchase order evidences FLP's use of its marks in commerce. The validity of the purchase order, like the credibility of a witness, should be determined by a finder of fact. *See Anderson*, 477 U.S. 255; *see also Talent Mobile Dev. v. Headios Grp.*, No. SA CV 16-0464-DOC (DFMx), 2017 WL 6940548, at *4 (C.D. Cal. Oct. 3, 2017) (whether the invoices or other documents are forged are questions of fact for the jury).

### iii. FLP's Invoices.

FLP argues that the Court should consider, as evidence of use in commerce, an email containing 143 pages of invoice summaries and 95 multi-paged actual invoices showing that FLP sold tens of thousands of LIVIT products to a host of merchants and retailers, such as Amazon, Piggly Wiggly, and Food City. Doc. 92 at 4. According to FLP, the e-mail was sent to the Wolf Parties' prior counsel in October 2017. *Id.* The prior counsel withdrew in February 2018. Doc. 51. During a July 26, 2018 telephone conference with the Court, the Wolf Parties' current counsel stated that she had not received these invoices.

Doc. 81 at 9-10. FLP's counsel said he could resend them, and the Court ordered FLP to do so by August 2, 2018. Docs. 78; 81 at 12.

The Wolf Parties assert that FLP never sent the invoices as ordered by the Court. The Wolf Parties filed a notice with the Court to this effect (Doc. 80), and FLP's counsel did not respond. In August 2018, FLP sent one email with internal spreadsheets documenting sales of LIVIT products, but no actual invoices. Doc. 80-1 at 8. FLP argues that it sent Ms. Wolf a duplicate e-mail on September 27, 2018, with the invoices and disclosures attached. Doc. 107 at 7. To support this assertion, FLP provides a copy of the September 27 e-mail, but fails to submit anything that proves the invoices at issue were actually transferred to the Wolf Parties' current counsel. *See* Doc. 108-2.

FLP attaches approximately twenty pages of invoices to its motion, suggesting sales to C&S, Value Merchandisers, and Piggly Wiggly, as well as internal spreadsheets listing sales of specific items which FLP claims are LIVIT items. *See* Doc. 96-1. But these documents, which are not Bates–stamped, may not have been disclosed in discovery. Doc. 102 at 6. FLP argues that the Court should consider the invoices because any failure to produce them during discovery was harmless. Doc. 107 at 7.

Rule 37 provides that if a party fails to disclose information required by Rule 26(a) or (e) – which includes documents, like the invoices, that the party will use to support its position at trial (Rule 26(a)(1)(A)(ii)) – then the party cannot use that information to support a motion "unless the failure was substantially justified or [] harmless." Fed. R. Civ. P. 37(c)(1). FLP's only argument seems to be that because there is no trial date, the parties were not harmed by FLP's failure to disclose this evidence earlier. The Court disagrees. The documents are presented in support of FLP's summary judgment briefing, and the Wolf Parties should not have to deal with them for the first time now, well after discovery has concluded. Additionally, during the July 26 teleconference, the Court *required* FLP to produce the invoices precisely so that discovery issues could be resolved before summary judgment briefing. *See* Doc. 78. The Court cannot find that FLP's failure

1  to do so was substantially justified or harmless.  The Court will not consider the invoices
2  in ruling on the parties' motions.[7]

3  ### iv.    FLP's Affidavits.

4       FLP provides affidavits from its CEO and VP in charge of compliance.  *See*
5  Docs. 113, 99-1 at 9-12.  The CEO states that he conceived of the mark in 2001 and FLP
6  selected it for use in January 2015.  Doc. 113-1 at 1.  The CEO attests to ordering LIVIT
7  products on the NAIE purchase order and having a long history of wholesaling products
8  with non-dollar stores like Walmart, Discount Drug Mart, Value Merchandisers, C&S
9  distribution, Piggly Wiggly and Food City.[8]  *Id.* at 3-5.  The VP of compliance attests to
10 FLP moving its LIVIT products to sale prior to registering for the trademark in November
11 2015.  Doc. 99-1 at 10.

12       The Wolf Parties assert that the affidavits are conclusory and cannot create a
13 genuine dispute of material fact.  *See* Doc. 102 at 4.  The Court does not agree.  The
14 affidavits identify the declarants as persons with knowledge and set forth dates and events
15 central to FLP's claim that it used the marks.  FLP has also provided additional
16 documentation in the form of the NAIE purchase order.

17 ### v.    The Wolf Parties' Affidavits.

18      The Wolf Parties provide two affidavits from brokers who worked for FLP and attest
19 to never seeing LIVIT products offered or sold by FLP.  *See* Doc. 83-5 at 34-37.  These
20 affidavits counter FLP's evidence and create a question of fact on whether and when FLP
21 used the challenged mark.  "[T]he weighing of the evidence, and the drawing of legitimate
22 inferences from the facts are jury functions, not those of a judge."  *Anderson*, 477 U.S. at
23 255.

---

[7] The Court will hear further arguments from the parties on whether these invoices may be used at trial.  One FLP email seems to concede that the invoices were not delivered to the Wolf Parties' previous counsel during discovery (*see* Doc. 108-2), but the actual date of production is not entirely clear from the evidence presented to the Court.

[8] The parties refer to these large retailers as "non-dollar stores" to distinguish them from the many stores which sell all products for a dollar or less.  Doc. 113-1 at 6-7.

### vi.    Conclusion.

The parties' conflicting arguments and evidence raise questions of fact on which party first used the marks in commerce.  As a result, the Court cannot grant summary judgment for either side on FLP's infringement claim.

### 2.    Likelihood of Confusion.

Each side moves for summary judgment on whether there is a likelihood of confusion.  *See* Docs. 82 at 17-18; 92 at 10-13.  The touchstone for trademark infringement is likelihood of confusion, which asks whether a reasonably prudent consumer is "likely to be confused as to the origin of the good or service bearing one of the marks."  *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012).  This determination is made by applying the well-established *Sleekcraft* factors: (1) strength of the mark, (2) proximity of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) types of goods and degree of care exercised by consumers, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion of the product lines.  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  This eight-factor test is a "pliant" one, in which "the relative importance of each individual factor will be case-specific."  *Brookfield*, 174 F.3d at 1054.

The Wolf Parties mostly reiterate their ownership arguments, stating that there can be no likelihood of confusion because FLP never manufactured, marketed, or sold the LIVIT products and LivIT!, LLC was clearly the first user in commerce.  Doc. 82 at 18.  As discussed above, these arguments present factual issues that must be resolved by the jury.  The Court cannot grant summary judgment in the Wolf Parties' favor on likelihood of confusion.  *See E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1291 (9th Cir. 1992).

FLP similarly reiterates its claim of ownership and argues that the *Sleekcraft* factors apply here.  *See* Doc.92 at 12-13.  But FLP provides very little to assist the Court in evaluating each of the eight factors.  For instance, FLP argues that sales data establish the strength of the mark but does not cite to the record and fails to discuss the conceptual

strength of the mark.  Doc. 92 at 12.  FLP cites one phone call from someone in the industry regarding confusion of the products, but, despite the extensive sales of LIVIT products claimed by FLP, provides no other concrete evidence of actual confusion.  *See Servpro Industr. v. Zerorez of Phoenix LLC*, 339 F. Supp. 3d 898 (D. Ariz. 2018) (failure to submit evidence of actual confusion amid voluminous sales weighs against likelihood of confusion).  And FLP provides bare conclusions regarding the use of similar marketing channels, types of goods, and proximity of goods, citing no evidence on either side regarding what marketing channels the companies use and the degree of care a consumer exercises in choosing these items.  *See Network Automation, Inc. v. Advanced Sys. Concepts Inc*. 638 F.3d 1137, 1151 (9th Cir. 2011) (convergent marketing channels are an important factor when they are niche markets or specialized outlets); *Servpro*, 339 F. Supp. 3d at 898 ("The sixth factor requires assessing the nature of the goods or services and the type of consumer who would be interested in those goods or services.").

Underlying FLP's *Sleekcraft* argument are the abundant factual issues that preclude summary judgment on ownership of the mark.  For example, for strength of the mark FLP states that it sold over 37,000 units in a relatively short amount of time.  Doc. 92 at 12.  This statement aligns with FLP's statement that it has sold tens of thousands of products bearing the FLP mark from December 9, 2015 to March 31, 2018.  Doc. 93 at 3.  But when explaining why it had no retail or licensing agreements, FLP states that it suspended "Livit trademarked product activity" once it learned of the potential trademark challenge in 2016.  Doc. 83-1 at 22; *see also* Doc. 99 ¶¶ 24-25 (affidavit from FLP CEO stating that 5,000 units of one specific LIVIT item were produced and purchased and then production was suspended).  Further, there are unchallenged statements from two brokers who claim they never saw LIVIT items on sale by FLP.  *See* Doc. 83-5 at 34-37.

The Court cannot resolve the likelihood of confusion issue on summary judgment.  This is an appropriate issue for trial.

### B. Intentional Interference.

Ms. Wolf moves for summary judgment on FLP's claim for intentional interference with prospective advantage. Doc. 82 at 19. A claim for tortious interference with business expectancy includes the following elements: (1) the existence of a valid contractual relationship or business expectancy, (2) the interferer's knowledge of the relationship or expectancy, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Antwerp Diamond Exch. of Am., Inc. v. Better*, 637 P.2d 733, 740 (Ariz. 1981) (citations omitted). The interference must also be improper as to motive or means. *Hill v. Peterson*, 35 P.3d 417, 420 (Ariz. Ct. App. 2001).

The Wolf Parties argue that FLP has not provided evidence showing a valid contractual relationship or business expectancy and their interference with the relationship or expectancy. Doc. 17 at 11-13. The Wolf Parties also contend that FLP has not pled any resulting damage. *Id.* at 13.

FLP's expectancy claim is based on sales to non-dollar stores. FLP contends that it has repeatedly sold items to such stores, including LIVIT products, and has a business expectancy to continue selling LIVIT items to them. Doc. 93 ¶ 31. FLP asserts that because Liv-IT!, LLC sold items to dollar stores, non-dollar stores will no longer purchase FLP LIVIT products. *Id.* ¶ 32. The Wolf Parties argue that FLP has not demonstrated that it had a valid contractual or business expectancy with any non-dollar store. Doc. 82 at 19-20. Nor can FLP provide evidence that any store stopped purchasing specific LIVIT items because of Liv-IT!, LLC's production and sale of items to dollar stores. Doc. 102 at 12.

FLP cites affidavits from its CEO and VP in charge of compliance, both attesting to a long relationship selling similar products to non-dollar stores and Liv-IT!, LLC's disruption of that relationship. Docs. 113-1; 99-1 at 9-12. The Wolf Parties argue that the affidavits should be disregarded as conclusory, but the Court finds that they are sufficiently based on the personal knowledge of the CEO and VP. The CEO attests that he has been involved with FLP for at least 18 years and describes the historical nature of non-dollar

store business and FLP's longstanding involvement in that business. Doc. 113-1 at 1, 6-8. He asserts that the Wolf Parties' sale of infringing products to dollar stores has caused non-dollar stores not to accept LIVIT products. *Id.* at 7-8. He asserts that the Wolf Parties understand this business and the effects of their sales on FLP, noting his past involvement with the Wolf Parties. *Id.* The VP provides similar evidence. Doc. 99-1 at 10-12.

Although this evidence is thin, the Court concludes that it is sufficient to survive summary judgment. *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001) ("This circuit has held that self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory."). The Court will deny the Wolf Parties' motion for summary judgment on FLP's intentional interference claim.

### C.      False Advertising in Violation of the Lanham Act.

FLP moves for summary judgment on its false advertising claim. Doc. 92 at 14-15. The Wolf Parties argue that FLP did not allege a false advertising claim. Doc. 102 at 13. But FLP alleged a claim under § 1125 of the Lanham Act, which provides a cause of action for false advertising. *See* 15 U.S.C. § 1125 (a)(1)(A)-(B); *Wells Fargo v. ABD Ins. & Fin. Servs.*, 758 F.3d 1069, 1071 (9thCir. 2014); *see also* Doc. 1 at 17.

To succeed on its false advertising claim, FLP must prove five elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products.

*Wells Fargo*, 758 F.3d at 1071 (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

FLP provides evidence that the Wolf Parties falsely represented that Liv-IT! was trademarked by putting the trademark symbol "®" next to Liv-IT! on their website.

Doc. 92 at 14. FLP argues that the Wolf Parties acted in bad faith with the intent to deceive when they continued to use the mark inappropriately after being put on notice that FLP was using the mark. *See* Doc. 92 at 15. FLP then confusingly argues that the Wolf Parties should be precluded from registering the mark because of their improper use. *Id*.[9]

FLP has provided no evidence other than its own conclusory allegations that the false use of the registration symbol deceived or had the tendency to deceive consumers, and that the alleged misrepresentation was material to consumer purchasing decisions. *See Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1111 (9th Cir. 2012) (testimony of customer that he was misled by false advertising satisfied the materiality element); *AECOM Energy and Constr. Inc v. Morrison Knudsen Corp.*, No. 17-56513, 2018 WL 4339995, at *2 (9th Cir. Sept. 11, 2018) (evidence that an employee confused defendant's business for the real business satisfied proof of materiality). Moreover, FLP's own statement of facts admits that there is a genuine dispute of fact as to whether the Wolf Parties made this statement falsely given that they claim proper ownership of the mark. *See* Doc. 93 ¶ 13. The Court will not award summary judgment on this claim.

### D. FLP's Attorneys' Fees Request.

FLP requests an award of attorneys' fees. Because FLP has not prevailed on its claims, this request is premature.

### E. Wolf Parties' Motion to Strike and for Sanctions.

The Wolf Parties move to strike all new issues and legal theories raised in FLP's reply brief. *See* Doc. 109 at 3. The Court does not consider arguments made for the first time first time in reply. *See Best Western Int'l, Inc. v. AV Inn Assocs.*, No. CV-08-2274-PHX-DGC, 2010 WL 289895, at *3 (D. Ariz. July 14, 2010); *see also Delgadillo v.*

---

[9] Remedies in a § 1125 action under the Lanham Act include (1) defendant's profits; (2) any damages sustained by the plaintiff, (3) the costs of the action for a violation of any right of the registrant of a mark registered in the USPTO. *See* 15 U.S.C. § 1117(a). The Act does not provide FLP the remedy of preventing the Wolf Parties from registering their mark – this action is reserved for the USPTO. *See Copelands' Enters., Inc. v. CNV, Inc.*, 945 F.2d 1563, 1566 (Fed. Cir. 1991) ("The improper use of a registration notice in connection with an unregistered mark, if done with intent to deceive the purchasing public or others in the trade into believing the mark is registered, is a ground for denying the registration of an otherwise registrable mark.").

*Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008). The Court will deny the Wolf Parties' motion to strike as moot.

The Wolf Parties move for sanctions against FLP for violations of Ethical Rules 3.3 and 3.4. Doc. 109 at 4-7. The Wolf Parties seek an award of their fees and costs to file the motion strike and request sanctions. Doc. 109 at 7. The Wolf Parties argue that FLP falsely asserted that Ms. Wolf exhibited products marked "LIVIT" at a recent tradeshow. Doc. 109 at 5. The Wolf Parties' argument is unclear because the picture FLP submitted to support its trade show assertion clearly demonstrated that "Liv-IT!LLC" was associated with the trade show booth. Doc. 62 at 23. The Court can find no violation of Rule 3.3 on that basis.

The Wolf Parties also argue that FLP lied to the court about its obligation to provide missing invoices to Ms. Wolf. The Court has not considered the invoices in ruling on these motions and will decide later whether to preclude them from trial. Preclusion of evidence, if warranted, will be a sufficient sanction for the alleged conduct.

Ms. Wolf also requests sanctions for FLP's untimely filing of its reply for summary judgment. Doc. 109 at 7. On October 1, 2018, FLP received an extension to file its motion for summary judgment and response to the Wolf Parties' motion. Doc. 91. The Court granted each party a two-day extension for the future response and reply motions as well. Doc. 100. FLP's final reply brief should have been filed on October 23 but was not filed until October 31. Doc. 107.

In the reply brief, FLP requested leave to file on that date because otherwise it would only have had seven days to prepare a reply brief and the Wolf Parties had fifteen days to prepare their reply brief.[10] *Id*. at 1. FLP argued it should have fifteen days to file its reply based on Local Rule 56.1(d), but this rule clearly provides that a party shall have fifteen days "unless otherwise ordered by the Court." L.R.Civ. 56.1(d). Here, the Court

---

[10] FLP actually argued that it would only have two days to file the reply brief because it erroneously indicated that its reply brief was due on October 19. *See* Doc. 107 at 1. That assertion is incorrect in light of the Court's extension to October 23. See Doc. 100.

unequivocally stated that it would give no further extensions of time, and FLP should file a reply brief by October 23. *See* Docs. 91; 100. Although FLP clearly filed an untimely reply, the Wolf Parties fail to identify any prejudice. Nor can the Court conclude that the reply has had any effect on the outcome of these motions.

No party should file a motion for sanctions or motion to strike in the future without first obtaining leave of court.

**IT IS ORDERED**:

1. The Wolf Parties' motion for summary judgment (Doc. 82) is **denied**.

2. FLP's motion for summary judgment (Doc. 92) is **denied**.

3. The Wolf Parties motion to strike and for sanction (Doc. 109) is **denied**.

4. The Court will hold a telephone conference with the parties on **January 31, 2019 at 3:30 p.m.** to set trial and final pretrial conference dates. Counsel for FLP, Inc. shall initiate a telephone conference to include counsel for all parties and the Court. If a dial-in number is to be used, Counsel for FLP, Inc. shall provide dial-in instructions to counsel for all parties and the Court no later than 12:00 noon on January 30, 2019.

Dated this 22nd day of January, 2019.

David G. Campbell
Senior United States District Judge